**H. Drew MAYO, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2009–SC–000820–MR.**

Supreme Court of Kentucky.

Sept. 23, 2010.

---

William F. McGee, Jr., Smithland, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Heather Michelle Fryman, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

A circuit court jury convicted H. Drew Mayo of one count of first-degree rape, one count of first-degree sodomy, and of being a second-degree persistent felony offender (PFO 2). Mayo now appeals from the resulting judgment as a matter of right.[1] Finding no reversible error, we affirm.

1. Ky. Const. § 110(2)(b).

## I. FACTUAL AND PROCEDURAL HISTORY.

The grand jury indicted Mayo for raping and sodomizing his estranged wife by forcible compulsion and for being a PFO 2. The charges proceeded to jury trial. At trial, the victim testified that she and Mayo had been separated for about two weeks before the acts in question occurred. According to the victim, she brought Mayo to her home—the former marital home that Mayo had vacated—to talk. The victim testified that an argument ensued and that Mayo became angry and forcibly raped her and forced her to perform oral sex on him. The victim testified that she did not want to have sex of any kind with Mayo at that time, but she engaged in the oral and vaginal copulation because Mayo threatened her with anal sex if she did not comply. The victim also testified that Mayo threatened to "bust" her in the mouth if she did not comply.

Mayo's version of events was different. Mayo agreed that he and the victim had been separated; but Mayo testified at trial that he and the victim had spent time together in the day or so preceding the alleged rape, and he believed they were going to repair their relationship. According to Mayo, he and the victim had consensual sexual intercourse several times in the hours preceding the alleged rape.

Obviously disbelieving Mayo, the jury convicted him of first-degree rape, first-degree sodomy, and being a PFO 2. The jury recommended ten years' imprisonment for the rape to be served consecutively to ten years' imprisonment for the sodomy. In lieu of these sentences, the jury recommended that Mayo be sentenced to twenty years' imprisonment for the PFO 2 conviction. The trial court sentenced Mayo in accordance with the jury's verdict and recommended sentences, after which Mayo filed this appeal.

## II. ANALYSIS.

Mayo raises several interconnected issues, some of which we will combine in this opinion. Mayo contends the trial court erred by:

- granting the Commonwealth's motion in limine to prevent testimony of past anal intercourse between Mayo and the victim;
- failing to grant a mistrial and failing to admonish the jury for remarks made by the Commonwealth both during its cross-examination of Mayo and during its closing argument;
- failing to ask Mayo expressly to waive his right to poll the jury; and
- returning partially completed jury verdict forms to the jury during deliberations in the penalty phase.

We find no reversible error as to any of Mayo's arguments.

### A. No Error in Excluding Evidence of Past Consensual Anal Intercourse.

On the morning the trial was scheduled to begin, the trial court conducted an in-chambers hearing on motions in limine, including an oral motion by the Commonwealth to prohibit evidence of the victim's sexual history. At the conclusion of that lengthy hearing, the trial court seemed to rule that Kentucky Rules of Evidence (KRE) 412, commonly known as the rape shield law, prevented testimony about the victim's sexual history because Mayo had not provided the Commonwealth with the fourteen-day notice required by KRE 412(c)(1)(A). During the trial, however, the trial court orally amended its ruling to permit questioning regarding prior sexual relations between Mayo and the victim near the time of the alleged rape. But the trial court did not allow testimony regarding prior anal intercourse between Mayo and the victim.

On appeal, Mayo contends the trial court committed reversible error by excluding testimony of alleged consensual anal intercourse between him and the victim. Mayo admitted to having had sexual relations with the victim on the day in question and was, thus, relying on a consent defense. So Mayo contends that the trial court should have allowed testimony about prior anal intercourse to show that the alleged threat he made to the victim—submit to oral and vaginal intercourse under threat of anal intercourse—was not really a threat because anal intercourse had previously been a consensual act between Mayo and the victim. We disagree that the trial court erred in its ruling.

Our analysis must begin with a recitation of the relevant provisions of KRE 412. That rule provides, in relevant part:

(a) **Evidence generally inadmissible.** The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):

(1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.

(2) Evidence offered to prove any alleged victim's sexual predisposition.

(b) **Exceptions:**

(1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:

. . . .

(B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution. . . .

. . . .

(c) **Procedure to determine admissibility.**

(1) A party intending to offer evidence under subdivision (b) must:

(A) file a written motion at least fourteen (14) days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause requires a different time for filing or permits filing during trial; and

(B) serve the motion on all parties and notify the alleged victim or, when appropriate, the alleged victim's guardian or representative.

(2) Before admitting evidence under this rule the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard. The motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise.

Although the general thrust of KRE 412 is toward exclusion of evidence regarding an alleged victim's sexual history, the rule makes an exception for evidence of past sexual behavior of the alleged victim with the accused if offered by the accused to prove consent or if offered by the prosecution. Certainly, we have interpreted KRE 412(b)(1)(B) in an earlier unpublished case to mean that "past sexual behavior between the alleged victim and the defendant is relevant and is generally admissible on the issue of consent" because "evidence of consensual sex or the desire to have consensual sex after an allegation of rape would tend to prove that consent may have in fact been given and that no rape oc-

curred."[2] Mayo relies upon this exception to argue that the trial court should not have excluded evidence regarding prior consensual anal intercourse Mayo allegedly had with the victim.

Before we delve into whether the trial court properly excluded this evidence, we must address some general principles. Mayo argued to the trial court, and seems to argue similarly before us, that sexual relationships between a husband and wife fall outside the protections of KRE 412 primarily because of a general assumption that spouses engage in sexual relations with each other. So Mayo's argument goes: any stigma associated with revealing a victim's sexual history would not apply when the alleged victim was the spouse of the alleged perpetrator because no juror would think less of a victim after learning that the victim had engaged in sexual relations with a spouse. But before we can address whether sex crimes committed against a spouse fall outside the protections of KRE 412, we must determine whether a spouse can even commit an inter-spousal sexual offense.

█ Former Kentucky law defined rape and sodomy in such a way as to preclude one spouse from raping or sodomizing the other spouse.[3] Under modern Kentucky law, however, it is clear that "[s]exual intercourse and deviate sexual intercourse can constitute rape or sodomy, even though the defendant and victim are married to one another."[4] So having determined that it is possible for a spouse to be guilty of raping or illegally—that is, without consent—sodomizing a spouse,[5] we move on to the question of whether evidence of inter-spousal sexual relations is outside the scope of KRE 412.

█ Mayo argues that evidence of sexual relations between a victim and spouse is outside the scope of KRE 412 because "[t]he obvious purpose of KRE 412 was to prevent unfair and unforeseen attack by a defendant upon the character of the victim"; but "[t]he husband/wife relationship is clearly not the type of evidence that would be [unforeseen] by the victim to be used at trial." But Mayo is unable to cite to *any* authority to support his contention that KRE 412 does not apply to inter-spousal sexual relations. The rule contains no such exception, and we decline to create one in this case. In short, KRE 412 is not rendered inapplicable simply because the victim is the spouse of the accused.

█ Having cleared away the procedural underbrush, we now may focus on the merits of the trial court's decision to exclude evidence of alleged past consensual anal intercourse between Mayo and the victim. At the hearing on the Commonwealth's motion in limine, the trial court focused upon the lack of notice given by Mayo of his intent to introduce evidence of his past sexual relations with the victim under the rape shield exception codified at

2. *George v. Commonwealth*, No. 2001–SC–1067–MR, 2003 WL 22227195, at *2 (Ky. Sept. 18, 2003).

3. *See* ROBERT G. LAWSON & WILLIAM H. FORTUNE, KENTUCKY CRIMINAL LAW § 11–2(e) (1998) ("Kentucky historically defined rape and sodomy as acts with someone other than a spouse, a definition in accord with both the common law and the Model Penal Code.") (internal footnotes omitted). For a convincing rejection of the reasons underlying the antiquated

theory that a husband could not be guilty of raping his wife, *see Warren v. State*, 255 Ga. 151, 336 S.E.2d 221 (1985).

4. LAWSON & FORTUNE at § 11–2(e).

5. Kentucky Revised Statutes (KRS) 510.020(1) provides that lack of consent by the victim is an element of all the offenses contained in KRS Chapter 510, which includes rape and sodomy.

KRE 412(b)(1)(B). Since there was admittedly insufficient notice given to comply with the requirements of KRE 412(c)(1)(A), the trial court had the discretion to rely upon the lack of notice alone to exclude testimony about the victim's sexual history with Mayo.

But the trial court did not ultimately rely upon the lack of notice. Instead, the trial court permitted testimony about the sexual relations Mayo claims to have had with the victim in the day or so before the rape; and Mayo repeatedly—and usually without objection—testified on both direct and cross-examination about those purported sexual encounters.[6]

■ The trial court really only excluded evidence of past alleged anal intercourse between Mayo and the victim, seemingly because it believed that such evidence would prejudice the victim in the eyes of the jury. Although it did not frame it as such, the trial court essentially barred the testimony regarding anal intercourse by applying KRE 403, which permits exclusion of otherwise relevant evidence if the probative value of that evidence is "substantially outweighed by the danger of undue prejudice. . . ."

The probative value of the evidence regarding a history of anal sex was low. Solely for the sake of analysis, we shall assume that the victim did have consensual anal sex with Mayo in the past. That does not mean, however, that she consented to having anal sex—or any other type of sex—with Mayo on the date in question. And the only real issue in Mayo's trial was whether the victim consented to the inter-

course in question, or whether that intercourse was rape by forcible compulsion.

At most, evidence of past anal sex with Mayo would show a slight lessening of the fear suffered by the victim when Mayo threatened her with anal sex if she did not consent to oral and vaginal intercourse. In other words, because the only real issue was whether the sex in question between Mayo and the victim was consensual, the fact that the victim and Mayo may have had consensual anal sex in the past does not make it more or less likely that she consented to having any type of sex—anal or otherwise—with Mayo at the time in question, especially since Mayo was permitted to testify repeatedly that he had had consensual sex with the victim multiple times in the hours preceding the rape. Adding a detail that those sexual encounters or other more temporally remote past sexual encounters involved anal intercourse did not materially add to Mayo's consent defense.

On the other hand, evidence that the victim had engaged in past anal intercourse with Mayo would have had the potential to embarrass the victim. Mayo has pointed to nothing concrete to contradict the trial court's conclusion that the victim would have been unduly prejudiced in the minds of the jurors if evidence were presented regarding the victim's alleged affinity for, and history of, anal intercourse.

■ Of course, evidence is not necessarily inadmissible if it has a stigmatizing effect.[7] But the stigma that may have been associated with a history of anal intercourse is not the only reason to exclude the evidence. As stated before, the proba-

---

6. The trial court conducted no KRE 412(c)(2) hearing before allowing extended testimony from Mayo regarding past sexual encounters he allegedly had with the victim. Neither side contemporaneously objected to this lack of a hearing. And neither side raised the lack

of a hearing as an issue on appeal. So we decline to address the prejudicial impact, if any, of the failure to hold a hearing.

7. *Smith v. Commonwealth*, 904 S.W.2d 220, 223 (Ky.1995).

tive value of that evidence in this case was low because it had little bearing on whether the victim consented to have intercourse with Mayo at the time in question, especially since Mayo was permitted to testify about his alleged sexual encounters with the victim in the hours leading up to the rape.[8] So permitting testimony about a history of anal intercourse was unnecessary and could have distracted the jury from its task of determining whether the victim consented to oral and vaginal intercourse at the time in question.[9]

▬▬▬ Determining whether proposed evidence's prejudicial effects substantially outweigh its probative value under KRE 403 is a delicate, fact-intensive inquiry. As an appellate court, we may only disturb a trial court's reasoned decision in this area if that decision is an abuse of the trial court's discretion.[10] On balance, we cannot find that the trial court abused its discretion when it ruled that the prejudicial effects of the anal intercourse testimony substantially outweighed that evidence's

probative value, nor do we conclude that the trial court's exclusion of this evidence improperly abridged Mayo's rights to cross-examine witnesses and to present a defense to the charges against him.

## B. No Reversible Error in Commonwealth's Cross–Examination and Closing Argument.

Mayo argues that the trial court erred by not granting a mistrial or admonishing the jury in response to questions asked of Mayo by the Commonwealth on cross-examination and statements made by the Commonwealth in closing argument. Although we disapprove of some of the Commonwealth's comments, we disagree with Mayo that the comments or questions entitle him to relief.

Generally, Mayo's objections on appeal follow three broad contours. First, he contends that he was entitled to a mistrial because the Commonwealth's improper cross-examination of him regarding other prior bad acts violates KRE 404.[11] Relat-

---

8. As stated previously, a sexual history between the victim and the accused is generally relevant. *George*, 2003 WL 22227195 at *2. But we perceive little probative value in letting a defendant testify that the precise sexual history he had with the victim included anal intercourse. So the trial court did not run afoul of *George* because it permitted general testimony about the victim's past sexual history with Mayo.

9. We have defined something as being prejudicial when it is unnecessary. *Romans v. Commonwealth*, 547 S.W.2d 128, 131 (Ky. 1977) ("Prejudice is a relative term. In the context of a criminal proceeding it can mean only that which is unnecessarily or unreasonably hurtful.") (quotation marks omitted). Although *Romans* did not involve a construction of prejudice in the context of KRE 403, we believe our definition of the term *prejudice* in *Romans* is applicable to determinations under that rule.

10. *See, e.g., Barnett v. Commonwealth*, 979 S.W.2d 98, 103 (Ky.1998).

11. KRE 404 provides, in relevant part, as follows:

(b) ... Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
 (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
 (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.
(c) *Notice requirement.* In a criminal case, if the prosecution intends to introduce evidence pursuant to subdivision (b) of this rule as a part of its case in chief, it shall give reasonable pretrial notice to the defendant of its intention to offer such evidence. Upon failure of the prosecution to give such notice the court may exclude the evidence offered under subdivision (b) or for good

edly, he contends the trial court erred by failing to exclude evidence of these purported prior bad acts. Finally, he alleges that the trial court erred by failing to grant a mistrial or admonish the jury because of statements by the Commonwealth about a "good jury" during its closing argument.

### 1. Partial Preservation.

■ Although Mayo's brief is vague on the subject,[12] our review of the record confirms the Commonwealth's contention that these interrelated issues are only partially preserved for appellate review. And Mayo did unsuccessfully move for a mistrial during the Commonwealth's cross-examination of him. So the denial of that motion for a mistrial is adequately preserved.

■ Mayo did object to the Commonwealth's reference to matters ostensibly covered by KRE 404, but that objection was based upon the alleged impermissible use of that evidence by the Commonwealth to show Mayo's bad character. On appeal, however, Mayo contends that the evidence in question fails admissibility under KRE 404(b) (i.e., that it is facially inadmissible) and, moreover, that the trial court should have excluded the matters because the Commonwealth did not give the requisite notice of its intent to introduce evidence of prior bad acts. The issue regarding the evidence's facial admissibility under KRE 404 is preserved, therefore; but any issue regarding exclusion because of the Com-

monwealth's failure to provide adequate notice is unpreserved.

■ Finally, Mayo did not ask for a mistrial during the Commonwealth's closing argument; instead, Mayo asked for the trial court to admonish the jury—a request the trial court granted. And Mayo expressed no contemporaneous dissatisfaction with the content of the trial court's admonition. So because Mayo received all the relief on that point he requested, his argument on appeal that he was entitled to a mistrial or a further admonition because of the Commonwealth's references to a "good jury" is unpreserved.

### 2. No Necessity for Mistrial and No Reversible KRE 404 Error.

■ In order to understand fully the mistrial issue, we must recount at some length the underlying testimony and questions. On cross-examination, the Commonwealth asked Mayo if his substance abuse was one of the "singular" problems of his marriage with the victim. Mayo admitted that his substance abuse was one of the "big factors" in his marriage. The Commonwealth then asked Mayo if he had a "pretty serious drinking problem" during his marriage, to which Mayo responded: "At that time, no I did not have a big drinking problem." The Commonwealth then asked if Mayo's drinking problem had gotten him "in trouble with the law" on "numerous times." Mayo responded, "It has." The Commonwealth then asked Mayo how many times

---

cause shown may excuse the failure to give such notice and grant the defendant a continuance or such other remedy as is necessary to avoid unfair prejudice caused by such failure.

12. Mayo's brief does not comply with Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v), which requires the argument section of an appellant's brief to contain "am-

ple supportive references to the record" and also requires "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review, and, if so, in what manner." Kentucky Rules of Criminal Procedure (RCr) 12.02 specifically provides that CR 76 applies to criminal actions.

he had been arrested for "AI" (alcohol intoxication). Mayo's counsel objected. Before the trial court made a ruling on the objection, the Commonwealth asked Mayo if the victim had been aware of problems Mayo had been "running into with the law" because of "alcohol abuse problems." Mayo's counsel objected to that question as not being "appropriate." [13]

The trial court did not specifically rule on Mayo's objection. Instead, the trial court told the Commonwealth to inquire about whether Mayo "had problems because of his drinking"; and the questioning would "go from that." Nevertheless, the Commonwealth immediately asked Mayo if the victim had had Mayo arrested a week before the rape. Mayo's counsel again objected, and a bench conference ensued.

During that bench conference, Mayo's counsel moved for a mistrial for the allegedly incurable prejudice Mayo suffered by the Commonwealth's repeated references to Mayo's past contacts with law enforcement. Mayo's counsel also argued that the Commonwealth's questions concerned prior bad acts for which it had not received notice. The trial court denied the motion for mistrial and permitted the Commonwealth to ask if Mayo had been arrested at the victim's behest a week before the rape to rebut Mayo's contention that he did not have a problem with alcohol during that time period. The trial court did not permit the Commonwealth to ask if Mayo had been convicted as a result of that arrest.

The Commonwealth then asked Mayo if the victim had had him arrested for AI a week before the rape, to which Mayo responded yes. The Commonwealth then asked if Mayo had spent the night in jail, to which Mayo again responded yes.

 Having established the facts surrounding the motion for a mistrial, we now turn our attention to the legal standard for granting a mistrial. A mistrial is an extreme remedy that should be granted only upon a showing of manifest necessity.[14] A reviewing court may only disturb a trial court's decision to grant, or refuse to grant, a mistrial if the trial court's decision is an abuse of discretion.[15] We do not believe the trial court abused its discretion by denying a mistrial in this case.

The victim testified that she did not allow drinking in her home. She also testified that she knew Mayo had a bottle of vodka on his person in the time period immediately preceding the rape. The Commonwealth's intent, as stated in its brief, was to impeach Mayo on cross-examination by casting doubt on his version of the events surrounding the rape—that the victim did not object to his drinking and that he and the victim had enjoyed sexual relations in the hours before the rape as an act of marital reconciliation.

We question, however, the necessity of an inquiry into the particulars of Mayo's arrest record. In order to impeach Mayo's version of events, the jury did not

---

**13.** Unfortunately, numerous objections and responses occurred in full view and hearing of the jury. Better practice would have been for any discussion regarding an objection (including the grounds for the objection, any response thereto, and the trial court's ruling) to have occurred at the bench outside the hearing of the jury. *Cf. Allen v. Commonwealth,* 286 S.W.3d 221, 232 n. 35 (Ky.2009) ("The attorneys and trial court dealt with many objections in open court in full hearing

of the jury. Many of the issues in this case would have been eliminated if all objections had been stated and explained, responded to, and ruled upon at the bench out of the jury's earshot.").

**14.** *Graves v. Commonwealth,* 285 S.W.3d 734, 737 (Ky.2009).

**15.** *Id.*

need to be informed of the number of AI arrests in Mayo's past, especially since some of those arrests could have been remote in time to the rape. And the victim had made references in her testimony to Mayo's alcohol use. So general questions concerning whether Mayo's alleged drinking problem had caused marital discord between Mayo and the victim would have been sufficient for impeachment purposes without raising the specter of KRE 404.

But even if we accept for the sake of analysis that the Commonwealth's questions regarding Mayo's arrest record and alleged problems with alcohol were improper and contrary to KRE 404, we do not conclude that any error was so egregious as to necessitate a mistrial.[16] The victim testified that Mayo purchased vodka shortly before the rape and that he had likely consumed some of that vodka. Mayo largely corroborated that version of

events. In light of all the properly admitted evidence against Mayo, we do not believe the trial court erred by determining that a mistrial was not necessitated because any error in the Commonwealth's questioning was not so egregious as to undermine the basic fairness of Mayo's trial.

 For the same reason, we decline to hold that any error in this regard entitles Mayo to relief. To the extent the issue of facial admissibility of evidence is preserved, any error is harmless because we conclude that the evidence in question did not substantially sway the jury's verdict in light of the strong evidence presented of Mayo's guilt.[17] Likewise, to the extent the issue is unpreserved for lack of notice, we do not conclude that the lack of notice was sufficiently egregious so as to have probably changed the result. So Mayo is not entitled to palpable error relief under RCr 10.26.[18]

---

16. The Commonwealth contends KRE 404 is inapplicable because the evidence of Mayo's alcohol consumption and related legal entanglements was not used to show a propensity that he raped the victim but was, instead, offered only to rebut Mayo's contention that the victim fabricated her story to punish Mayo. But the precise nature and number of Mayo's past alcohol-related arrests would appear to be collateral to the question of whether he raped the victim, especially because Mayo had admitted to having purchased vodka shortly before the rape. And no one has cited anything to show that the alcohol-related arrests in question resulted in any felony convictions. *See* KRE 609(a) (permitting impeachment of a witness based upon a past felony conviction); *Slaven v. Commonwealth*, 962 S.W.2d 845, 859 (Ky.1997) ("Only felony convictions can be used for impeachment in Kentucky...."). During the bench conference on Mayo's motion for a mistrial, the trial court even characterized the issue regarding whether Mayo had a drinking problem as being a "relatively minor point." So it appears that the Commonwealth's persistent questioning regarding the specifics of Mayo's arrest record was attempted impeachment on

a collateral matter. *See, e.g., Rowe v. Commonwealth*, 50 S.W.3d 216, 223–24 (Ky.App. 2001) (discussing prohibition on impeachment on collateral matter). And we question the Commonwealth's contention that its detailed questioning about Mayo's history with the criminal justice system falls outside KRE 404; but we need not definitively so hold because Mayo is not entitled to relief, regardless of whether the testimony at issue falls nicely under KRE 404.

17. *See, e.g., Colvard v. Commonwealth*, 309 S.W.3d 239, 249 (Ky.2010) ("RCr 9.24 requires us to disregard an error if it is harmless. A non-constitutional evidentiary error may be deemed harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error.").

18. *See, e.g., Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006) (holding that "the required showing [for palpable error relief] is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law.").

### 3. No Reversible Error from Commonwealth's Comments.

Mayo claims he is entitled to relief because of improper questions asked by the Commonwealth during its cross-examination of him and because of statements made by the Commonwealth during its closing argument. Essentially, Mayo is claiming an entitlement to relief based upon prosecutorial misconduct.

### a. The comments and questions at issue.

Mayo's main argument is based upon statements made by the Commonwealth during closing argument about a "good jury." More specifically, at one point during its closing argument, the Commonwealth began a comment by saying, "Is there a reason why a good jury would not return a finding . . ." at which point Mayo's counsel interrupted with an objection to the Commonwealth's statement as being "not proper." The trial court remarked that it did not understand the reason for the objection and invited counsel to the bench.

At that bench conference, Mayo's counsel stated that the Commonwealth's intimation to the jury that a good jury would find Mayo guilty was improper. The Commonwealth responded that it was not sure what the problem was but that it would "fix it." The trial court did not make a formal ruling on the objection. And Mayo requested no formal ruling. Instead, the trial court merely dispatched the Commonwealth forward to "fix it."

Immediately, the Commonwealth addressed the jury and feigned fault for assuming that this jury was going to be a good jury. Mayo's counsel objected. Instead of returning to the bench for clarification, the Commonwealth gestured toward Mayo's counsel and asked her—in full view and hearing of the jury—"Is it

your belief they are not a good jury?" The trial court then implored counsel: "Let's don't go into all that. Just, just move on to something else." Mayo's counsel, however, approached the bench and asked for an admonition that a good jury was a jury that considered all the facts and rendered the verdict it believed was appropriate. The Commonwealth stated it had no objection to such an admonition, after which the trial court admonished the jury that it would be a good jury whichever verdict it returned. Mayo requested no further relief.

Mayo's second basis for relief based upon prosecutorial misconduct stems from the Commonwealth's cross-examination of Mayo. Although his brief is thin on the subject, Mayo argues that the Commonwealth erred during its cross-examination of Mayo by "engag[ing] in a series of question[s] implying that defense counsel had acted improperly in preparing Mayo to testify."

Mayo has not cited to any specific portions of the record that contain such statements by the Commonwealth. Instead, Mayo points to his motion for a mistrial in which one of the stated grounds was the Commonwealth's alleged references to defense counsel improperly preparing Mayo to testify. Even though the Commonwealth pointed out Mayo's brief's noncompliance with CR 76.12, Mayo did not file a reply brief in an attempt to correct his oversight. We would be justified in disregarding this claim of error because counsel must sift through a record to show the reviewing court the basis for a claim for relief. But we did view Mayo's cross-examination in the course of resolving other issues in this appeal and, through that process, observed the Commonwealth ask Mayo whether he had, in preparation for testifying, been given by his attorney a copy of the transcript of an interview

Mayo had with a detective. Because Mayo has failed to direct us to anything more specific in the record underlying this claim for relief, we shall assume that that question by the Commonwealth is at issue in this appeal.[19] Again, we caution counsel in the future to comply with all briefing requirements set forth in CR 76.12.

### b. No entitlement to relief for prosecutor's misconduct.

 We begin our analysis by reciting the proper standard required for relief to be granted because of prosecutorial misconduct occurring during closing argument. An appellate court may reverse for prosecutorial misconduct occurring during closing argument only if the misconduct is "flagrant" or if: (1) the proof of guilt is not overwhelming, (2) an objection is made, and (3) the trial court failed to admonish the jury after sustaining the objection.[20]

 Mayo cannot meet all three elements of the test for non-flagrant prosecutorial misconduct. Setting aside the issue of whether the proof of Mayo's guilt was overwhelming, the trial court did admonish the jury—at Mayo's request—and Mayo expressed no dissatisfaction with the admonition, nor did Mayo request additional relief. An admonition is presumed to cure improper comments, and a jury is presumed to follow such an admonition.[21]

And a failure to ask for a mistrial following an objection and admonition from the trial court indicates satisfactory relief was granted.[22] So Mayo is not entitled to relief for non-flagrant prosecutorial misconduct for the "good jury" comments.

 Mayo is also not entitled to relief based upon the other comments in question, which Mayo perceives as having been a veiled accusation by the Commonwealth that defense counsel had improperly prepared, coached, or even scripted Mayo for his trial testimony. There is certainly nothing inherently improper with defense counsel discussing a case with his or her client in preparation for that defendant taking the witness stand. And a direct accusation that an attorney had improperly coached the client may well be improper unless there was a satisfactory evidentiary basis for such an incendiary accusation. But we do not construe the Commonwealth's comments regarding whether his counsel had provided Mayo with a copy of the transcript of Mayo's conversation with a detective as being a direct accusation of wrongdoing by Mayo's counsel.[23] To the contrary, the question was part of an extended attempt by a frustrated prosecutor to get Mayo to say whether he had reviewed a transcript of his interview with a detective so that the prosecutor could refer to that transcript while cross-examining

---

19. At the bench conference on Mayo's motion for a mistrial, the Commonwealth did refer to Mayo's direct testimony as being "pre-prepared." But that possibly accusatory statement by the Commonwealth was made outside the hearing of the jury and could not have caused any prejudice to Mayo.

20. *Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky.2002).

21. *Torrence v. Commonwealth*, 269 S.W.3d 842, 845 (Ky.2008).

22. *Id.*

23. The Commonwealth's comment at the bench that Mayo's direct examination was "pre-packaged" could perhaps be construed as such a direct accusation of wrongdoing. At best, that comment showed a lack of decorum and civility from the Commonwealth to defense counsel. But Mayo suffered no prejudice from that comment because it was uttered outside the jury's earshot. And we trust the Commonwealth will refrain from making such seemingly accusatory comments in the future unless it has a compelling evidentiary basis for doing so.

Mayo. In short, we conclude that nothing said in the jury's earshot regarding counsel's preparation of Mayo for his testimony was misconduct, flagrant or otherwise.

Having found that none of the comments support relief as non-flagrant misconduct, we now turn to whether they rise to the level of flagrant misconduct. Although we strongly disapprove of the Commonwealth's asking defense counsel if she thought the jury was not a good jury, we do not believe that unfortunate statement merits reversal of Mayo's convictions. So we conclude the comments are misconduct, but not flagrant misconduct.

 We use a four-part test to determine if a prosecutor's improper comments rise to the level of flagrant misconduct. The four factors of this flagrancy test are as follows: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." [24]

 Of course, this four-part test applies only if a court has determined that a prosecutor's comments were improper. The prosecutor's asking defense counsel within the jury's earshot whether she did not believe the jury to be a "good jury" was inarguably improper. So we shall apply the four-part test to determine if the impropriety rises to the level of flagrant misconduct.

As to the first factor, we do not believe the jury was misled by the "good jury" remarks, especially since the trial court admonished the jury that a good jury returned whatever verdict it believed was warranted by the evidence. But the Com-

monwealth's questioning defense counsel about whether she believed the jury was a "good jury" would appear to have been prejudicial to Mayo. No reasonable juror would want to be considered anything but a "good" juror, and it certainly was not to Mayo's benefit for the Commonwealth to insinuate that Mayo's counsel did not believe these jurors comprised a "good" jury. This factor weighs in Mayo's behalf.

As to the second factor, the comments were isolated. These "good jury" comments, including the bench conference where Mayo's counsel requested an admonition, took up only a couple of minutes out of a two-day trial. This factor weighs in the Commonwealth's behalf.

As to the third factor, we must conclude that the comments were deliberately placed before the jury. Neither our review of the video record nor the Commonwealth's brief indicates anything that would even hint, much less definitively show, that the Commonwealth's direct question to Mayo's counsel about whether she considered the jury to be a "good jury" was anything other than deliberate. As Mayo notes in his brief, "[i]t is inconceivable that the prosecutor had any good faith basis in questioning defense counsel in front of the jury during closing . . . if defense counsel 'thought this was a good jury.'" This factor weighs in Mayo's favor.

The fourth factor is the weight of the evidence against Mayo. The victim's testimony was direct and damning. And the Commonwealth produced medical evidence showing physical injuries to the victim, as well as other witnesses who testified to Mayo seeming angry and aggressive immediately after the rape. So we conclude

---

**24.** *Hannah v. Commonwealth,* 306 S.W.3d 509, 518 (Ky.2010) (quotation marks and cita-

tion omitted).

that the evidence against Mayo was strong, meaning that this factor weighs on behalf of the Commonwealth.

We are faced, therefore, with two factors weighing on behalf of Mayo and two factors weighing on behalf of the Commonwealth. Given this state of relative equipoise concerning the specialized test for flagrant prosecutorial misconduct during closing argument, we must use the general test for whether relief for prosecutorial misconduct is proper: an examination of the trial as a whole to determine if the improper comments undermined the essential fairness of Mayo's trial.[25]

We have taken into account the fact that the trial court took swift corrective action by admonishing the jury about what actually constitutes a "good jury." And Mayo received all the relief he sought from the trial court. So we decline to find on appeal that the trial court should have taken the initiative to grant Mayo additional relief. In short, we conclude that the unfortunate comments of the Commonwealth were not so egregious as to have undermined the essential fairness of Mayo's trial. But we strongly caution the Commonwealth in the future to avoid directing these types of personal comments toward defense counsel or to intimate to any jury that a "good jury" would return a guilty verdict.

## C. No Error in Failure to Ask Defendant if he Desired to Poll Jury.

■ Immediately after the trial court announced the jury's verdict in the guilt phase, the trial court asked if either side wanted to review the verdict. Counsel for both sides approached the bench and viewed the verdict forms. Neither the Commonwealth nor defense counsel voiced any objection to the completed verdict forms, nor did either side request to poll the jury. The trial then proceeded to the penalty phase. On appeal, Mayo claims that he is entitled to relief because there is no affirmative showing that he waived his right to poll the jury. We disagree.

■ Well over one hundred years ago, our predecessor court forcefully held that "[t]he right to poll the jury in criminal causes has in this state always been deemed an essential part of the right of trial by jury."[26] That ancient right is currently codified in RCr 9.88, which provides, in relevant part, "[w]hen the verdict is announced, either party may require the jury to be polled, which is done by the clerk's or court's asking each juror if it is his or her verdict." But longstanding precedent also clearly holds that "the poll of the jurors is a permissive right which may be waived."[27]

We decline Mayo's invitation to require a criminal defendant to affirmatively waive his or her right to poll the jury. Nothing in the plain language of RCr 9.88 requires a trial court to ask a criminal defendant if the defendant desires to waive the right to poll the jury, and Mayo has not pointed to any other authority that would require such an affirmative waiver. In reality, the general rule seems to be that a right to poll the jury is deemed waived in the absence of a timely request.[28]

**25.** *Torrence,* 269 S.W.3d at 844 ("our focus in claims of prosecutorial misconduct is on whether the trial as a whole was fair.").

**26.** *Temple v. Commonwealth,* 77 Ky. 769, 771, 1879 WL 6665 at *2 (1879).

**27.** *Powell v. Commonwealth,* 346 S.W.2d 731, 733 (Ky.1961).

**28.** 23A C.J.S. *Criminal Law* § 1886 (2010); 21A Am.Jur.2d *Criminal Law* § 1214 (2010) ("The right to have the jury polled may be waived, either affirmatively or by inaction. Failure to make a timely demand or request

■ We agree with, and hereby adopt, the consensus viewpoint that a defendant's right to poll the jury will generally be deemed to have been validly waived if the defendant does not timely request the polling of the jury. In other words, a defendant may not sit on his rights only later to ask an appellate court for relief. Instead, the burden is on the defendant to assert affirmatively and timely his right to poll the jury. Since Mayo made no request to poll the jury, despite having had ample opportunity to do so, the trial court did not err by not asking Mayo if he desired to waive the polling of the jury.

### D. No Error in Correcting Verdict Forms During Deliberations.

During penalty-phase deliberations, the jury sent a note to the trial court stating that the instructions contained typographical errors: incorrect numbering and a missing signature line. Mayo's counsel stated that she did not have a copy of the instructions so she could not see what the alleged problems might be. So, without objection and seemingly at Mayo's counsel's suggestion, the trial court directed a bailiff to retrieve the instructions from the jury so that the trial court and all counsel could review them. The review disclosed that the jury had completed the verdict forms concerning the penalties for rape and PFO 2 but had not addressed the penalty for sodomy in the first degree. The trial court corrected the typographical errors and returned the instructions and verdict forms to the jury so that they could complete their deliberations.

Mayo's counsel objected, saying that she had not known the jury verdict forms were partially completed when she agreed to have the instructions brought into the courtroom. Mayo's counsel did not make a particularized objection. Instead, she merely observed that the procedure was "funky" and "highly irregular." Mayo's counsel noted that she was unaware of the precise nature of any error, but she was objecting to preserve whatever error may exist for appellate review.

On appeal, Mayo contends that he is entitled to relief because the jury failed to follow their instructions because they recommended a penalty for the PFO 2 charge without first having recommended a penalty for the sodomy charge. We disagree.

Mayo's general objection to the trial court was not based upon any specific legal ground. So he has improperly presented a different basis for objection on appeal.[29] Since the grounds for the objection were never properly brought to the trial court's attention, our review is limited to determining if any error rises to the level of being a palpable error.[30]

■ Even if we assume for discussion purposes that better practice would have been for the jury to complete the forms for the underlying rape and sodomy convictions before it turned its attention to the PFO 2 charge, Mayo is not entitled to relief. Mayo has pointed to absolutely no prejudice stemming from the trial court's actions. The jury's recommended penalty for all convictions was within the legal limits. In fact, the jury's recommendation of a twenty-year sentence for the PFO 2 conviction was the minimum possible sen-

---

for a poll, where there has been reasonable opportunity to do so, operates as a waiver of the right.") (internal footnotes omitted).

**29.** See, e.g., Commonwealth v. Duke, 750 S.W.2d 432, 433 (Ky.1988) ("A defendant

cannot pursue one theory at the trial court level and another on the appellate review.").

**30.** Mayo would not be entitled to relief even if we deemed this issue to have been properly preserved.

tence. So we cannot say that the jury's failure to record a verdict on the form for the underlying sodomy charge before recording a verdict on the form for the PFO 2 charge undermined the fairness of Mayo's trial or was such an egregious error as to be shocking or jurisprudentially intolerable.[31] In fact, we have noted our approval of a trial court similarly correcting erroneous jury instructions during jury deliberations.[32] Mayo is not entitled to relief on this issue.

### III. CONCLUSION.

For the foregoing reasons, we affirm the trial court's judgment.

All sitting. ABRAMSON, CUNNINGHAM, SCHRODER, SCOTT, and VENTERS, JJ., concur. NOBLE, J., concurs in result only.

---

31. *Martin*, 207 S.W.3d at 4.

32. *Garner v. Commonwealth*, 645 S.W.2d 705, 707 (Ky.1983) ("The second error assigned by appellant arises from the following circumstances. The court had furnished the jury with erroneous instructions following the PFO phase of the trial. This error was discovered before the jury returned to give its verdict and amended instructions were prepared by the court. The jury was then brought out of the jury room and into open court in order to give them the amended instructions and the jury informed the judge that they had already fixed a punishment under the erroneous instruction. The court ordered the jury not to disclose its verdict and sent them back to the jury room with the amended instructions. The present verdict resulted. . . . [T]he action of the trial is not only free of error but also laudatory.").