RENDERED: SEPTEMBER 19, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0692-MR

DONOVAN PITMON                                               APPELLANT

v.          APPEAL FROM NELSON CIRCUIT COURT
            HONORABLE CHARLES C. SIMMS, III, JUDGE
            ACTION NO. 23-CR-00249

COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, KAREM, AND McNEILL, JUDGES.

McNEILL, JUDGE: Donovan Pitmon ("Pitmon") appeals from a Nelson Circuit

Court judgment convicting him of first-degree strangulation and first-degree

persistent felony offender and sentencing him to twelve years in prison. For the

reasons below, we affirm.

## BACKGROUND

Pitmon and Samantha Doolin ("Doolin") began a romantic relationship in 2021 that, according to both parties, became "toxic." In June 2023, Doolin reported to police that Pitmon had strangled and raped her. Pitmon was arrested and charged with first-degree strangulation and first-degree rape. Following a jury trial, Pitmon was acquitted of the rape charge but convicted of strangulation and sentenced to twelve years in prison. This appeal followed.

## ANALYSIS

### 1. KRE[1] 404(b) Evidence

Pitmon first argues he was deprived of a fair trial due to the prosecutor's introduction of KRE 404(b) evidence in violation of the court's pretrial ruling. Before trial, the Commonwealth filed a KRE 404(c) notice of intent to introduce evidence of Pitmon's prior domestic assault conviction. Pitmon filed a motion in limine to exclude the conviction, arguing the notice was untimely and the evidence was irrelevant and unduly prejudicial. The circuit court partially granted the motion, holding the Commonwealth could offer proof that Pitmon was arrested on a misdemeanor charge in Fayette County but could not identify the charge or conviction.

---

[1] Kentucky Rules of Evidence.

On appeal, Pitmon has identified nine statements which he contends violate this ruling. Pitmon concedes he did not object to the statements at trial but claims the errors are preserved for our review by his motion in limine. Alternatively, he requests palpable error review under RCr[2] 10.26. "Motions in limine can preserve issues for appellate review, provided they are sufficiently detailed about what the moving party intends to exclude." *Montgomery v. Commonwealth*, 505 S.W.3d 274, 280 (Ky. App. 2016). "[F]or a motion in limine to preserve an issue for appeal, it must bring the particular error argued on appeal to the attention of the trial court 'both as to the matter objected to and as to the grounds of the objection.'" *Jenkins v. Commonwealth*, 607 S.W.3d 601, 612 (Ky. 2020) (citation omitted).

Here, Pitmon moved to exclude evidence of his past criminal charges and convictions as unduly prejudicial, citing KRE 403. Of the challenged statements, only two explicitly mention Pitmon's prior conviction for fourth-degree assault. Many statements only hint at a possible charge or conviction. Others reference Pitmon's violence towards women. Thus, we find some of Pitmon's challenges preserved and others unpreserved. We will address each statement individually below.

Statement 1

---

[2] Kentucky Rules of Criminal Procedure.

Pitmon first challenges the prosecutor's statement during opening argument that in June 2023 Pitmon was living with Savannah Lester (the mother of one of his children) and he "found out that Savannah had another relationship . . . [and] Mr. Pitmon was arrested, and he was jailed in the Fayette County Correctional Center." Arguably, this statement would qualify as identifying Pitmon's prior charge, so we find the alleged error preserved for review. However, we find no error in the prosecutor's comment during opening argument. Opening and closing arguments are simply that—*arguments*. They are not evidence. *Newcomb v. Commonwealth*, 410 S.W.3d 63, 88 (Ky. 2013) (citation omitted). The court told the jury that opening statements were not evidence and the only evidence to be considered was testimony from the witness stand. Furthermore, the statement only hinted at a possible charge, and that was in passing.

### Statement 2

Pitmon next challenges the prosecutor's statement, also during opening argument, that Doolin and Pitmon started fighting because "it was a violation of his bond condition to go see Savannah Lester and it could have cost her the money that she posted for the bond." Again, this challenge is arguably preserved. But as above, we find no error. Again, this statement was not evidence. It also did not identify Pitmon's charge. It only revealed that Pitmon could have no contact with Savannah Lester. Further, Pitmon did not object to (and has not

contested on appeal) a similar statement by Doolin that she "had the paperwork from the jail that [Pitmon] was not supposed to have any contact with [Savannah Lester]."

Statement 3

The next alleged violation comes from Doolin's direct examination:

Commonwealth:  Well, was there an issue with what [Pitmon] discovered on Savannah Lester's phone?

Doolin:  Yes.

Commonwealth:  All right. Tell the jury about that.

Doolin:  He was using her old phone, and he, I guess she didn't re-clear it all out, and he went through it and saw pictures of him or her and this guy Jalen.

Commonwealth:  Another man.

Doolin:  Yes.

Commonwealth:  Okay.

Doolin:  And that is why he—
.
Commonwealth:  Ultimately, after the blow-up of that, he ended up in jail.

Doolin:  Yes.

Commonwealth:  And you said that he got his new phone June 5th, and this all occurred, and he was arrested late on the night of June 5th.  Is that right?

Doolin:  Yes.

We find Pitmon's challenge to this statement preserved by his motion in limine. This statement gets a little closer to violating the court's pretrial ruling, even if it does not explicitly identify Pitmon's prior charge and conviction for fourth-degree assault. Assuming the statement was admitted in error, we find the error harmless. An error is harmless "if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009) (citation omitted). "The inquiry is not simply whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Id.* (internal quotation marks and citation omitted).

Doolin testified in graphic detail to Pitmon's assault, specifically his strangulation of her. She said that Pitmon grabbed her by the throat and took her to the ground. With both hands around her throat, he began squeezing tighter and shaking her. Everything started to go black, and she saw white spots. She thought she was going to die.

Her testimony was supported by that of her friend, Rochelle Johnson, who took photos of her injuries and testified that Doolin had bruises on her neck shaped like fingermarks. Pictures of these injuries were introduced into evidence. Pitmon admitted that these injuries were not present before June 8 (the day of the

-6-

assault) and could not explain them. We have no doubt the error, if any, did not substantially influence the jury's verdict.

Statement 4

Pitmon next challenges Doolin's statement on direct examination that she and Pitmon "have had multiple conversations about him putting his hands on both of his baby mamas." This alleged error is unpreserved because it is beyond the scope of Pitmon's motion in limine to exclude "past criminal charges or convictions[.]" So we review only for palpable error. "A party claiming palpable error must show a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Chavies v. Commonwealth*, 374 S.W.3d 313, 322-23 (Ky. 2012) (citation omitted). "An error is palpable only if it is shocking or jurisprudentially intolerable." *Allen v. Commonwealth*, 286 S.W.3d 221, 226 (Ky. 2009) (internal quotation marks and citation omitted).

Here, Doolin's statement about Pitmon "putting his hands on both of his baby mamas" did not amount to palpable error. As noted above, there was ample evidence of Pitmon's assault of Doolin. Further, during his defense, Pitmon introduced a video of an intoxicated Doolin making the exact same claim. Pitmon

also failed to object to similar statements that were admitted into evidence (and have not been raised on appeal).[3]

## Statement 5

Pitmon next objects to Doolin's testimony that after he assaulted her, he exclaimed "I just did this to Savannah. I'm going to fucking jail." Although the statement does not expressly identify a previous charge or conviction, it might imply one, so we treat this alleged error preserved. However, in the context of similar unchallenged statements, Pitmon cannot show prejudice. For instance, Doolin also testified that Pitmon called her on April 13, 2023, and told her, "I need you to come get me. Me and Mary [the mother of one of Pitmon's children] just got into it and I headbutted her and blacked her eye." Pitmon did not object to this statement and has not raised it as an error on appeal. Thus, we find any error harmless.

## Statement 6

Pitmon also complains of Doolin's testimony that she knew "it [domestic violence] was going to happen again. I knew that he had did it multiple times." Like Statement 4, we review this statement for palpable error because it does not mention a "past criminal charge or conviction." For the same reasons outlined in our discussion of Statement 4, we find no palpable error.

---

[3] The prosecutor asked defense witness Tereylin Calbert if Pitmon put his hands on women.

## Statement 7

Pitmon next challenges the prosecutor's comment to Mary McMakin that she sounded "just like a domestic violence victim." On cross-examination, the prosecutor asked McMakin if Pitmon had ever hit her. McMakin said no. When confronted with photos of bruising on her face, McMakin claimed she fell. The prosecutor responded, "you sound just like a domestic violence victim." Because the statement does not identify a previous charge or conviction, we review it for palpable error, and we find none. By the time the prosecutor made this statement, Doolin had already testified that Pitmon had told her he had "headbutted [Mary] and blacked her eye." Pitmon did not object to this testimony and has not challenged it on appeal. We cannot say that, without the error, a different result was probable.

## Statements 8 and 9

On cross-examination, the prosecutor questioned Pitmon about Doolin's statement on video that Pitmon puts his hands on women. The following exchange ensued:

> Commonwealth: You do [put your hands on women], don't you?
>
> Pitmon: No, sir.
>
> Commonwealth: You've never struck a woman before?
>
> Pitmon: No, sir.

Commonwealth: Okay . . . so Mary's [statement] that you had struck her in front of your child, she's lying about that?

Pitmon: Mary told you what happened, sir. She hit me.

Commonwealth: Savannah Lester. Did you put your hands on her?

Pitmon: No, sir.

Commonwealth: But you plead guilty to assault fourth degree over there in Lexington . . . didn't you?

Pitmon: Yes, sir.

During closing argument, the prosecutor again referenced Pitmon's assault conviction. Certainly, these comments violated the court's pretrial ruling not to identify Pitmon's past charges or convictions. And the errors were preserved by Pitmon's motion in limine. However, we find the errors harmless. First, the prejudice was minimal considering similar unchallenged statements. Second, as noted above, significant evidence supported the jury's finding that Pitmon committed the offense of first-degree strangulation. This was not just a "he said, she said" case. The Commonwealth introduced multiple photographs of Doolin's injuries, as well as testimony from Doolin's friend, Rochelle Johnson, who communicated with Doolin during the assault and took the photographs later that day. We are confident the errors did not substantially influence the judgment.

-10-

## 2. Prosecutorial Misconduct

Pitmon next argues that the prosecutor improperly defined first-degree strangulation in his closing argument. While discussing the elements of first-degree strangulation, the prosecutor said:

> I disagree with his characterization that Donovan Pitmon only had to intend to cut off or impede her air. That's not what it says. "A person acts intentionally with respect to a result or to conduct when its conscious objective is to cause that result or to engage in that conduct." Ladies and gentlemen, he intended to put his hands around her throat and squeeze, okay? He may have not, you know, and again it's just pure and utter speculation, and he may have not have intended to cut off the airflow and subject the carotid. But he did. And it's because he intended to engage in squeezing.

Pitmon objected, arguing that the statute requires that he "intentionally impede[] the normal breathing or circulation of the blood[.]" KRS[4] 508.170. The court admonished the jury that they "will just need to follow the court's instructions on this." Pitmon expressed no dissatisfaction with the admonition and requested no further instruction.

"Prosecutorial misconduct can occur through an improper closing argument." *Barrett v. Commonwealth*, 677 S.W.3d 326, 332 (Ky. 2023) (citation omitted). "An appellate court may reverse for prosecutorial misconduct occurring during closing argument only if the misconduct is 'flagrant' or if: (1) the proof of

---

[4] Kentucky Revised Statutes.

guilt is not overwhelming, (2) an objection is made, and (3) the trial court failed to admonish the jury after sustaining the objection." *Mayo v. Commonwealth*, 322 S.W.3d 41, 55 (Ky. 2010) (citing *Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky. 2002)). We first note that the prosecutor technically misstated the law. The language of KRS 508.170 is clear that one must "intentionally impede[] the normal breathing or circulation of the blood of another person" to be guilty of first-degree strangulation. However, in this instance we decline to find reversible error.

First, Pitmon cannot meet all the requirements for non-flagrant prosecutorial misconduct. Without deciding whether the proof of guilt was overwhelming, the circuit court did admonish the jury to follow the instructions, and Pitmon voiced no dissatisfaction with the admonition, nor did he request additional relief. "An admonition is presumed to cure improper comments, and a jury is presumed to follow such an admonition. And a failure to ask for a mistrial following an objection and admonition from the trial court indicates satisfactory relief was granted." *Mayo*, 322 S.W.3d at 55 (citations omitted).

Furthermore, we cannot find that the statement constituted flagrant misconduct, as the court's jury instructions provided the correct legal standard. Under Kentucky law, "[i]t is presumed that the jury will follow the instructions issued to it by the trial court." *Morgan v. Scott*, 291 S.W.3d 622, 643 (Ky. 2009) (footnote citations omitted). Our Supreme Court, when considering a

similar situation, declined to find flagrant misconduct, holding that a misstatement of law in the Commonwealth's closing argument was "mitigated by the fact that the trial court's jury instructions correctly reflected the law[.]" *Matheney v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006), *as modified* (Apr. 4, 2006).

Pitmon alleges a second instance of prosecutorial misconduct in the cross-examination of defense witness Tereylin Calbert. The prosecutor began his questioning as follows:

> Commonwealth: Tereylin, you know me, don't you?
>
> Calbert: Yes, sir.
>
> Commonwealth: And, you know me through football at Bardstown. I used to cook for you every Friday.
>
> Calbert: Yes, sir.
>
> Commonwealth: And when your house burned, I helped you out with that, didn't I? Gave you a bunch of money, didn't I?
>
> Calbert: You didn't give me any money. Maybe my parents, maybe. I don't recall that.
>
> Commonwealth: Are you high right now?
>
> Calbert: No, sir.
>
> Commonwealth: Have you been smoking weed today?
>
> Calbert: No, sir.

The prosecutor also referred to Calbert several times as Pitmon's "ride or die."

Pitmon contends the prosecutor's questions about "weed" and "being high," coupled with his assertion that he knew the witness's family, improperly suggested he had personal knowledge about Calbert's recreational activities that undermined his credibility. He also argues the prosecutor's depiction of Calbert as Pitmon's "ride or die" was unduly prejudicial because "it invited the jury to view Calbert and [Pitmon]'s relationship through a racially-charged lens of a term popularized in hip-hop music for someone who was so committed to someone else that they would go to jail for them."

We note that this argument is unpreserved; therefore, our review is for palpable error only. Because there was no objection, "we will reverse only where the misconduct was flagrant and was such as to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 627 (Ky. 2010) (citations omitted). To determine whether misconduct was flagrant, we consider four factors: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Brafman v. Commonwealth*, 612 S.W.3d 850, 861 (Ky. 2020) (citation omitted). "We look at the claimed error in context to determine whether, as a whole, the trial was rendered fundamentally unfair." *Id.* (citation omitted).

Assuming, without deciding, the complained-of comments were improper, they did not result in manifest injustice or render the trial fundamentally unfair. Concerning the prosecutor's question to Calbert if he was "high" or had smoked "weed" that day, we find minimal prejudice. Calbert's testimony added little to Pitmon's defense. He seems to have been primarily called as a witness to authenticate a Snapchat video he took a week after the alleged assault, which the defense argued showed Doolin without any visible injuries. The remarks were isolated in the Commonwealth's ten-minute cross-examination, and the evidence against Pitmon, although not overwhelming, was convincing.

Similarly, as to the prosecutor referring to Calbert as Pitmon's "ride or die," we find no prejudice. While Pitmon claims the phrase "invited the jury to view Calbert and [Pitmon]'s relationship through a racially-charged lens of a term popularized in hip-hop music for someone who was so committed to someone else that they would go to jail for them," we find the phrase not so loaded. According to Merriam-Webster, the phrase is slang for "someone you would do anything for" with examples given of its regular use in popular culture. Furthermore, the phrase was only used twice, and the strength of the evidence against Pitmon was significant. We find no flagrant misconduct in either instance.

3. Inadmissible Hearsay/Bolstering

Pitmon next argues it was error for Detective Eric Williamson to testify to what Doolin told him during his investigation. He contends this bolstered Doolin's credibility and was inadmissible hearsay. Pitmon concedes the error is unpreserved and requests palpable error review.

During the Commonwealth's case-in-chief, the prosecutor asked Detective Williamson what led to his investigation. Detective Williamson stated that Doolin reached out to the Bardstown Police Department and reported a domestic violence incident. The detective then summarized her allegations as follows:

> So, during the course of a domestic violence incident that was verbal and physical at the time between Samantha Doolin and Mr. Pitmon, Ms. Doolin was strangled on three different occasions during that morning when this event took place. Also, sexual intercourse took place where she did not consent to. When she was strangled, she described the strangulation as her airway being restricted, she couldn't breathe, she said that she was seeing spots. So, her airway and blood was [sic] restricted enough to where it was causing some issues with her vision, the way she described it, as well as she felt like she was going to die. That's how she described it to me when I conducted my interview with her.

We agree that the admission of this testimony was error. "Generally, a witness may not vouch for the truthfulness of another witness." *Stringer v. Commonwealth*, 956 S.W.2d 883, 888 (Ky. 1997). And an officer testifying to a

-16-

victim's statements can be improper bolstering. *See Smith v. Commonwealth*, 920 S.W.2d 514 (Ky. 1995); *Belt v. Commonwealth*, 2 S.W.3d 790 (Ky. App. 1999)). Further, "[t]here is no hearsay exception for statements made by an alleged victim of [assault] to a police detective." *Alford v. Commonwealth*, 338 S.W.3d 240, 246 (Ky. 2011) (citing *Smith*, 920 S.W.2d at 516-17); *see also Belt*, 2 S.W.3d at 792.

However, the admission of this testimony did not rise to the level of palpable error. Here, Doolin's testimony was not the only evidence of the alleged assault. The Commonwealth also introduced photographic evidence of Doolin's injuries as well as testimony from Doolin's friend Rochelle Johnson corroborating Doolin's story.

Pitmon also points to a second incident of alleged bolstering. In questioning Detective Williamson about his decision to present charges to the grand jury, he replied, "Given the evidence and the context of what took place that night, I believe Ms. Doolin, according to the evidence and information we got, was strangled and raped on that night." Detective Williamson's statement amounted to an assertion that he believed Doolin's version of what happened.

> The rule is that a police officer may testify about information furnished to him only where it tends to explain the action that was taken by the police officer as a result of this information *and* the taking of that action is an issue in the case. Such information is then admissible, not to prove the facts told to the police officer, but only to prove why the police officer then acted as he did. It is admissible *only if there* is an issue about the police

officer's action.

*Kerr v. Commonwealth*, 400 S.W.3d 250, 257 (Ky. 2013) (citation omitted).  The "relevancy of such statements . . . [turns] on whether the action taken by the police officer in response to the information that was furnished is an issue in controversy . . . ."  *Brewer v. Commonwealth*, 206 S.W.3d 343, 351-52 (Ky. 2006) (citations omitted).

Here, the reason law enforcement did not initially pursue rape charges against Pitmon was an issue of controversy.  In closing argument, Pitmon's counsel told the jury:  "Detective Williamson and the county attorney went down in district court and dismissed the rape charge before it even went to the grand jury . . . ."  On direct examination, Detective Williamson clarified that after initially dismissing the rape charge, he spoke with Doolin again and reviewed further evidence, which led to his decision to seek an indictment for rape.  Therefore, we find no error, much less palpable error, in the admission of this statement.

### 4. Cumulative Error

Finally, Pitmon argues that the combined effect of the foregoing errors warrants reversal.  "Under the cumulative error doctrine, multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair."  *Finch v. Commonwealth*, 681 S.W.3d 84, 94 (Ky. 2023) (internal quotation marks and citation omitted).

"Cumulative error may only be said to occur where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Id.* (internal quotation marks and citation omitted). "Where, as in this case, however, none of the errors individually raised any real question of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Brown*, 313 S.W.3d at 631. While Pitmon's trial was not error-free, these errors did not render his trial fundamentally unfair. We decline to find cumulative error.

## CONCLUSION

Based on the foregoing, the judgment of the Nelson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky