Fred FURNISH, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2004–SC–000387–MR.

Supreme Court of Kentucky.

Aug. 23, 2007.

As Modified on Denial of Rehearing
Nov. 26, 2008.

As Corrected Dec. 15, 2008.

Randall L. Wheeler, Karen Maurer, Assistant Public Advocates, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Louis Franklin Mathias, Jr., Michael A. Nickles, Jr., Assistant Attorneys General, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

## OPINION OF THE COURT

This appeal is from a judgment based on a jury verdict imposing the death penalty upon Appellant, Fred Furnish. For reasons hereinafter explained, the issues addressed pertain only to the sentencing phase of Appellant's trial.

This case arose on June 25, 1998, when a 66–year–old widow was found strangled to death in her Crestview Hills home. The residence had been ransacked, and jewelry and credit cards were stolen. During the guilt phase of the trial, the defense conceded that Appellant was "a thief and a burglar" and that he had been at the residence on the day of the murder, but denied the actual killing, claiming that another "mystery person" was the one who murdered the woman. After a 17–day trial, the jury found Appellant guilty of murder and other offenses including first-degree robbery and first-degree burglary.

Upon direct appeal, this Court affirmed Appellant's conviction for murder and other related crimes but held that the trial court erred in denying Appellant the benefit of a newly enacted statutory provision which authorized a sentence of life without the benefit of probation or parole in capital murder cases. For that reason, the case was remanded for a new penalty phase where Appellant would be given an instruction on life without possibility of parole.[1]

At the retrial of the penalty phase, testimony was not received with respect to Appellant's guilt. A factual narrative, agreed upon by both parties, was read to the jury and certified copies of the convictions were introduced. The new jury recommended a death sentence. Appellant waived a presentence investigation report and requested to be sentenced immediately after the victim impact statements were presented to the court. He was again sentenced to death.

In this appeal, Appellant presents numerous assignments of alleged penalty phase error.

## I. Aggravating Circumstances

■ Under Kentucky law, when a jury returns a verdict of death, it must designate in writing the aggravating circumstance(s) which it finds beyond a reasonable doubt.[2] In the instant case, the jury in Appellant's initial trial designated in writing that it found the following aggravating circumstances beyond a reasonable doubt: "The offense of murder was committed while the Defendant was engaged in the commission of the offense of robbery in the first degree and burglary in the first degree and was committed for the purpose of receiving money or any other thing of monetary value, or for other profit." As the parties agreed to the narrative of facts that was read to the second sentencing jury, a narrative that included the aggravating circumstances previously found, there was no need to require another factual finding of aggravating circumstances.

Nevertheless, Appellant argues that he was denied due process of law because the jury that ultimately sentenced him to death relied on the previous jury's findings

---

**1.** *Furnish v. Commonwealth,* 95 S.W.3d 34 (Ky.2002).

**2.** KRS 532.025.

of aggravating circumstances rather than making its own independent finding of aggravators. In our view, by virtue of the agreed narrative statement, Appellant stipulated to the existence of aggravators before the second sentencing jury and it was unnecessary to resubmit the issue. We note, however, that without the stipulation, the outcome of this issue could be different.

We are not persuaded by Appellant's assertion that *Apprendi v. New Jersey*[3] and *Blakely v. Washington*[4] preclude him from stipulating to the aggravating factors. Both *Apprendi* and *Blakely* concerned the propriety of shifting certain penalty-enhancing factual determinations from the jury to the court. Those cases do not prohibit a defendant from stipulating to penalty-enhancing facts. Indeed, in both cases, the Court acknowledged that a defendant may either stipulate to the relevant facts or even consent to the judicial factfinding of certain necessary facts. Furthermore, *Blakely* noted that stipulating to facts or agreeing to judicial factfinding as to sentencing enhancements may be a prudent strategy if introduction of the relevant evidence proving such facts would prejudice the defendant. The evil sought to be eliminated by *Apprendi* and *Blakely* was nonconsensual judicial factfinding of penalty-enhancing factors which infringed a defendant's right to have a jury find every element of the crime beyond a reasonable doubt. Moreover, nothing in KRS 532.025 prevents a defendant from stipulating to the existence of aggravating circumstances nor is it inconsistent with the general rule that criminal defendants may knowingly and voluntarily waive statutory rights. Thus, the trial court did not err in determining that Appellant permissibly stipulated the existence of the aggravating circumstances.

## II. Separate Conviction

■ Appellant also contends that the introduction of a separate murder conviction should have been inadmissible at the retrial of his penalty phase because the conviction did not exist at the time of the original penalty phase. Specifically, in 2002, after Appellant's convictions and original sentences in the instant case, he entered a guilty plea to the murder of another elderly woman who had been strangled in her home in 1997. The prosecution introduced evidence of this conviction in the penalty phase retrial. Appellant claims that because the prior conviction could not have been used at trial if he had not pursued his appeal, allowing its introduction at the retrial penalized him for pursuing his appeal.

While this precise issue appears to be of first impression in Kentucky, KRS 532.025(1)(b), KRS 532.055(2)(a), and our holding in *Templeman v. Commonwealth*[5] are instructive of the issue. KRS 532.025(1)(b) mandates that a presentencing hearing be conducted before the jury in which it may consider certain mitigating and aggravating evidence, including the defendant's record of any prior criminal convictions or absence of such prior convictions. KRS 532.055(2)(a) permits the Commonwealth during the penalty phase to introduce evidence relevant to sentencing including prior convictions of the defendant and the nature of such prior offenses.

**3.** 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

**4.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**5.** 785 S.W.2d 259 (Ky.1990).

In *Templeman*, we explicitly held that the term "prior" referred to "the status of the defendant at the time of sentencing, not at the time of the commission of the charged crime." [6] In *Templeman*, we approved introduction of a conviction that was obtained subsequent to the offense for which Templeman was being sentenced because at the time of sentencing it had become a "prior" conviction.

■ Federal jurisprudence concerning the permissibility of imposing harsher penalties on a retrial necessitated by a meritorious appeal is also instructive. Specifically, in *Texas v. McCullough*,[7] the U.S. Supreme Court rejected the contention that a longer sentence upon retrial could be imposed only if it was based upon conduct of the defendant occurring after the original trial. The Court held that even where the trial court imposed a harsher sentence on retrial than the jury had imposed prior to McCullough's successful motion for a new trial, McCullough's constitutional due process rights were not violated where the harsher sentence was not a result of vindictiveness against the defendant for exercising his constitutional rights. In *McCullough*, the harsher sentence was justified by the testimony of additional witnesses and other evidence that was not presented during the first trial. Further, the Court contrasted the defendant's right to appeal with the government's right to present relevant aggravating circumstances as follows:

> To be sure, a defendant may be more reluctant to appeal if there is a risk that new, probative evidence supporting a longer sentence may be revealed on re-

trial. But this Court has never recognized this "chilling effect" as sufficient reason to create a constitutional prohibition against considering relevant information in assessing sentences.[8]

Furthermore, the Kentucky truth-in-sentencing statute is designed to provide the jury with information relevant to arriving at an appropriate sentence for a particular offense.[9]

In the instant case, the second sentencing jury was informed that Appellant had been convicted of having previously murdered another victim. It is of no significance that Appellant's prior crime did not result in the required final conviction until after his conviction in this case. At the penalty phase retrial, the jury was entitled to all relevant evidence including the evidence of Appellant's prior crime, without regard to when the conviction occurred. Clearly, under both *McCullough* and *Templeman*, evidence of such conviction was permissible.

### III. Estoppel

■ Appellant claims that the Commonwealth was estopped from seeking the imposition of the death penalty because it had offered and accepted a plea of guilty for life without parole for a similar murder and burglary that Appellant committed. The trial court correctly found that the Commonwealth was not estopped from seeking the death penalty. Appellant has given no authority as to why the general rule found in *Taylor v. City of LaGrange*,[10] which precludes estoppel against the Commonwealth should not apply here. In addition, he makes no contention of detri-

---

6. 785 S.W.2d at 260.

7. 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986).

8. 475 U.S. at 143, 106 S.Ct. 976.

9. *See Williams v. Commonwealth,* 810 S.W.2d 511 (Ky.1991).

10. 262 Ky. 383, 90 S.W.2d 357 (1936).

mental reliance on any representation made by the Commonwealth when he entered his plea in the first case, nor that he otherwise changed his position in a manner that would justify any estoppel.[11] Furthermore, the trial court properly declined to conduct a proportionality review.[12] Thus, this assignment of error is without merit.

## IV. Jury Selection

■ Appellant asserts that the trial court erred by excusing for cause, five jurors who stated that for religious reasons they could not impose the death penalty. This issue was decided in *Parrish v. Commonwealth,*[13] and Appellant's claim is, in effect, a request to reconsider the issue. The jurors here, as those in *Parrish,* could not consider the full range of penalties and therefore were properly excused. Thus, the argument is unavailing.

Appellant also claims that the trial judge erred by failing to excuse for cause those jurors who could not consider mitigation and those who could not consider the full range of penalties. In *Mabe v. Commonwealth,*[14] this Court considered at great length the standards relative to the excusal of a juror for cause. We recognized that the trial court has broad discretion to determine whether a prospective juror should be so excused.[15]

■ The trial court also refused to strike two prospective jurors for their alleged inability to consider mitigating circumstances. However, both of the jurors indicated that they would be able to follow the instructions of the trial judge and put all the facts and circumstances together in deciding an appropriate punishment. Considering all the circumstances with due deference to the opportunity of the trial court to observe the demeanor of the prospective jurors, the decision to deny the motion to strike was not an abuse of discretion. The trial court correctly refused to strike prospective jurors for an alleged inability to consider mitigating circumstances. The trial court also properly declined to strike prospective jurors for an alleged inability to consider the full range of penalties. There was no error.

## V. Cross-examination of Mitigation Witnesses

Appellant next contends that the cross-examination of his mitigation witnesses was improper and that the comments of the prosecutor during closing argument denied him due process.

A careful examination of the record does not support this argument. Here, the questioning and comments by the prosecutor did not exceed that authorized by *Payne v. Tennessee,*[16] on which Appellant relies. Further, the prosecutorial limits regarding victim impact evidence enunciated by this Court in *Bowling v. Commonwealth*[17] were observed. The prosecutor's conduct was not improper and did not make the jury more likely to impose a death sentence.

■ Specifically, Appellant contends that the prosecutor sought to prejudice the

---

11. *Revenue Cabinet v. Samani,* 757 S.W.2d 199 (Ky.App.1988).

12. *See McClellan v. Commonwealth,* 715 S.W.2d 464 (Ky.1986).

13. 121 S.W.3d 198 (Ky.2003).

14. 884 S.W.2d 668 (Ky.1994).

15. *See also Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

16. 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

17. 942 S.W.2d 293 (Ky.1997).

jury by pointing out the fact that he had exercised his right to a jury trial. During cross-examination of Appellant's sister, the prosecutor asked, "[Y]our brother exercised his right to go to trial on the murder charge that he was facing involving Mrs. Williamson? Didn't he?" Counsel for Appellant objected and the trial court sustained the objection but denied the motion for a mistrial. A mistrial is appropriate "only when there is a fundamental defect in the proceedings which will result in a manifest injustice."[18] Appellant had already been found guilty, a fact known to the jury, and the inquiry was not anything novel. Thus, there was no prejudice to Appellant.

Appellant argues that there was misconduct on the part of the prosecutor in cross-examining another defense witness when he asked her if she had e-mailed Appellant or had checked his web site. He contends this was improper comment on the amenities in prison. We find this argument to be without merit. The incident had no possible opportunity to inflame the jury, particularly in view of the widespread use of e-mail.

In closing argument, the Commonwealth called Appellant "evil," an "animal" and a "wolf." We reiterate our previous condemnation of such improper attacks.[19] There is no place in a courtroom for such personal vilification of a defendant, no matter how vile the charges against him. We strongly caution prosecutors throughout this Commonwealth to refrain from such personal attacks against defendants. However, we are not con-

vinced that the improper comments necessitate reversal given the strong evidence arrayed against Appellant. Such comments did not render Appellant's entire trial fundamentally unfair.[20] Finally, we disagree with Appellant's argument that the prosecutor improperly cajoled the jury with an appeal to community responsibility. On the contrary, the prosecutor merely stated the obviously correct fact that the jurors represented the citizens of Kenton County.

## VI. Restrictions on Time and Manner of Allocution

Appellant filed a pretrial motion requesting that Appellant be allowed an allocution to the jury before it deliberated on his sentence. The trial court granted this motion but Appellant further requested that he be permitted to make the allocution after the closing argument of the prosecutor. He claimed that to do otherwise would not be effective and would allow the prosecutor to conduct a de facto cross-examination. This request was denied.

Appellant argues that Section 11 of the Kentucky Constitution provides that in criminal prosecutions the accused has a right to be heard by himself and counsel. This serves as the basis for the right to hybrid counsel.[21] However, such language has never been held to create a right of allocution in Kentucky.

The Oregon case cited by Appellant to buttress his argument, *State v. Rogers*[22] does not provide legal support for the right of allocution as he claims. While

---

**18.** *Gould v. Charlton Co., Inc.,* 929 S.W.2d 734, 738 (Ky.1996).

**19.** See *Sanborn v. Commonwealth,* 754 S.W.2d 534 (Ky.1988); *King v. Commonwealth,* 253 Ky. 775, 70 S.W.2d 667 (1934).

**20.** *Stopher v. Commonwealth,* 57 S.W.3d 787 (Ky.2001).

**21.** *C.f. Hill v. Commonwealth,* 125 S.W.3d 221 (Ky.2004).

**22.** 330 Or. 282, 4 P.3d 1261 (2000).

*Rogers* was factually similar to this case, the Oregon court concluded that the trial judge had broad discretion to conduct the proceedings and that nothing in the Oregon constitutional provision overrode the authority of the trial judge to conduct the trial in an orderly manner. The Oregon Supreme Court determined that the trial judge had acted within his discretion and that there was no error. It should be observed that the Oregon court first interpreted its constitution as including a right to allocution in 1988.

■ This Court has indirectly considered the issue of allocution in *Quarels v. Commonwealth*,[23] but did not identify any right to allocution under the Kentucky constitution. It has long been held that the trial court has broad discretion in the conduct of the trial and that such actions, unless clearly erroneous, will not be disturbed on appeal.[24] Finally, the trial court did not err by requiring the allocution prior to the closing argument of the Commonwealth and the comment on allocution by the prosecutor was not improper. The timing of the allocution did not violate KRS 532.025(1)(a) and did not allow a de facto examination of the accused.

### VII. Photographs

■ Appellant claims that it was error for the trial court to allow the Commonwealth to introduce photographs portraying uncontested facts because they were repetitious, gruesome and inherently in-

flammatory. The photographs were reviewed in pretrial hearings in great detail. The trial court admitted some and excluded others, allowing those that were grounded in the narrative statement read to the jury. The photographs which were admitted in the guilt phase were not objectionable and all of the photographs were explanatory of the narrative statement. There was no violation of any of the requirements of *Boone v. Commonwealth*.[25]

■ The photographs allowed the jury to see an overview of the criminal acts involved and were properly admitted. Simply because relevant pictures are gruesome and the crime is heinous does not render their admission faulty.[26] The autopsy photographs were necessary to show the injuries on the body of the victim, that she had struggled and had been beaten by Appellant. The photographs demonstrated proof of facts in issue.[27] There was no abuse of discretion.

### VIII. Aggravating Circumstances (Grand Jury)

Appellant contends that the aggravating circumstances were required to have been contained in the indictment by the grand jury. This argument was originally considered and rejected by this Court in the first appeal.[28] There is no authority to support the claim that aggravating circumstances must be described in the indictment.[29]

**23.** 142 S.W.3d 73 (Ky.2004).

**24.** *See Veach v. Commonwealth*, 572 S.W.2d 417 (Ky.1978).

**25.** 821 S.W.2d 813 (Ky.1992).

**26.** *See Clark v. Commonwealth*, 833 S.W.2d 793 (Ky.1991).

**27.** *Holland v. Commonwealth*, 703 S.W.2d 876 (Ky.1985).

**28.** *Furnish v. Commonwealth*, 95 S.W.3d 34 (Ky.2002).

**29.** *See e.g. Wheeler v. Commonwealth*, 121 S.W.3d 173 (Ky.2003). *See also Ernst v. Commonwealth*, 160 S.W.3d 744 (Ky.2005), (declining to adopt the argument in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)).

## IX. Trial Court's Imposition of Sentence

Next, Appellant argues that the trial court believed that it was compelled to accept the jury verdict and abdicated its responsibility to review the jury's recommended sentence. We cannot agree. The trial judge verbally made his anti-death penalty views clear. However, acknowledging that death is permissible under Kentucky law, the trial court did not deem the penalty inappropriate in view of the particular facts of the case. Appellant also contends that there is no standard to guide judges in regard to the imposition of the death penalty. This Court has previously rejected this type of argument in *Bowling v. Commonwealth*[30] and in *Foley v. Commonwealth.*[31]

Notwithstanding, Appellant claims that the trial court's report demonstrates the lack of guidance. KRS 532.075 provides that whenever the death penalty is imposed, the trial court must prepare a report in the form of a standard questionnaire prepared and supplied by the Supreme Court. To support his claim, Appellant points to one of the aggravating circumstances the court included in the report, maintaining that it was not found by either jury. The record clearly refutes Appellant's contention, as the jury designated three aggravating factors, including the one Appellant complains was not found by either jury. Accordingly, the report of the trial court was in compliance with KRS 532.075 and does not provide solace for Appellant. The contents of the report do not support any allegation of error.

## X. Penalty Phase Instructions

 Appellant asserts that the instructions given by the trial court in the penalty phase were inadequate and insufficient. Appellant then proceeds to present thirteen individual arguments to support his contention. It would appear that all these issues are unpreserved. The proposed instructions presented on appeal were not the instructions given at trial. There is nothing to indicate these proposed instructions were ever presented or tendered to the trial court. There is no part of the record where these alleged instructions are discussed. An unpreserved error cannot be reviewed when, as in this case, it is impossible to ascertain from the record whether the error was harmless or prejudicial. Prejudice will not be presumed from a silent record.[32]

Appellant cites over thirteen individual challenges as to why the jury instructions presented by the trial judge were insufficient and denied him a fair and reasonable sentence. Appellant does not identify where any of the instructions he now complains should have been given were offered, nor does he identify where a motion or objection was made prior to the trial court instructing the jury. It appears that counsel for Appellant failed to object for reasons of trial strategy. It is not at all convincing that Appellant would not have received the death sentence in the absence of any of the unpreserved alleged erroneous instructions.[33]

## XI. Reuse of Aggravators

 Appellant contends that using the burglary and robbery convictions as

---

**30.** 942 S.W.2d 293 (Ky.1997).

**31.** 942 S.W.2d 876 (Ky.1996).

**32.** *Baze v. Commonwealth,* 965 S.W.2d 817 (Ky.1997).

**33.** *Cf. Furnish v. Commonwealth,* 95 S.W.3d 34 (Ky.2002).

aggravating circumstances is double jeopardy and, thus, requires reversal. This issue is not preserved. However, this Court has previously held that aggravating circumstances are not criminal offenses subject to a double jeopardy analysis.[34] It is not double jeopardy "to impose a separate penalty for one offense while using the same offense as an aggravating circumstance authorizing imposition of capital punishment for another offense." [35] There is no violation of Section 13 of the Kentucky Constitution or the Fifth Amendment to the United States Constitution.

## XII. Constitutionality of Death Penalty

Appellant complains that the death penalty statute is unconstitutional and sets out six individual arguments, none of which are persuasive. His argument that *Jacobs v. Commonwealth*[36] amends KRS 532.025 and allows all murders to be eligible for the death sentence is meritless. In *Jacobs*, this Court recognized that the statute provides for the use of nonstatutory aggravators. Moreover, *Jacobs* is not applicable here because only statutory aggravators were used.

There is no support in this record for the allegation that the death penalty is discriminatory or that it is arbitrarily applied. A question of plea bargaining is a matter reserved to the sound discretion of the prosecuting authority.[37] There was no abuse of discretion in this matter. The prior decisions of this Court on these issues are rational and legally sound.

## XIII. Arbitrary and Disproportionate Sentence

Appellant claims that the death penalty statute is arbitrary and disproportionate considering other similar cases. His contentions center on the fact that he should receive the same sentence as he did in his previous murder case which was life without parole for 25 years. This contention was addressed hereinabove under "Estoppel." Moreover, our review of similar cases does not support the claim that Appellant's sentence is excessive or disproportionate.[38]

Appellant received a fundamentally fair trial. The jury considered all the facts, as well as the full range of penalties and determined that the circumstances of this

---

**34.** *Furnish,* 95 S.W.3d 34; *Wheeler,* 121 S.W.3d 173.

**35.** *St. Clair v. Roark,* 10 S.W.3d 482, 487 (Ky.1999).

**36.** 870 S.W.2d 412 (Ky.1994).

**37.** *Cf. Commonwealth v. Corey,* 826 S.W.2d 319 (Ky.1992).

**38.** The death sentence was not excessive or disportionate to the penalty imposed in similar sentences since 1970 considering both the crime and the defendant. Similar cases have been previously recited by this Court in a number of decisions. *Simmons v. Commonwealth,* 746 S.W.2d 393 (Ky.1988) provides a comprehensive list and that list is incorporated herein by reference and our review in accordance with KRS 532.075(5). In addition, we have also considered the case of

*Moore v. Commonwealth,* 771 S.W.2d 34 (Ky. 1988); *Sanders v. Commonwealth,* 801 S.W.2d 665, 668 (Ky.1990), *cert. denied,* 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991); *Taylor v. Commonwealth,* 821 S.W.2d 72 (Ky.1991); *Epperson v. Commonwealth,* 809 S.W.2d 835 (Ky.1991); *Haight v. Williamson,* 833 S.W.2d 821 (Ky.1992); *Wilson v. Commonwealth,* 836 S.W.2d 872 (Ky.1992); *Bowling v. Commonwealth,* 873 S.W.2d 175 (Ky.1993). *cert. denied,* 513 U.S. 862, 115 S.Ct. 176, 130 L.Ed.2d 112 (1994); *Bussell v. Commonwealth,* 882 S.W.2d 111 (Ky.1994); *Sanborn v. Commonwealth,* 892 S.W.2d 542 (Ky.1995) and *Perdue v. Commonwealth,* 916 S.W.2d 148 (Ky.1996). We have conducted an independent review of the circumstances and conclude that they exceed any minimum justifying capital punishment.

murder would require a sentence of death. The fact that he received life without parole for a similar crime, himself, does not persuade us that he should never receive a greater penalty.[39]

## XIV. Proportionality Review

Appellant believes that the method of proportionality review used by this Court is inappropriate and constitutionally deficient. It has been previously decided in every death penalty case, including reversals, that the proportionality review now used by this Court does not violate state or federal provisions.[40] The arguments presented by Appellant have also been rejected by the United States Supreme Court in *Tuilaepa v. California*[41] and the Sixth Circuit in *McQueen v. Scroggy*.[42] Appellant was not prejudiced by denial of access to KRS 532.075(6) data. *Harper v. Commonwealth*[43] is still applicable and appropriate.

## XV. Lethal Injection

Appellant states that lethal injection and electrocution are cruel and unusual punishments and seeks a ruling that they violate the Eighth Amendment of the Federal Constitution and Section 17 of the Kentucky Constitution. This contention is somewhat premature because KRS 431.220(b) allows the accused to elect the method of execution until twenty days prior to its imposition. If no election is made the method will be lethal injection. Here, no such election has been made. At this time we choose to follow our prior decisions regarding the constitutionality of both methods of execution.[44] This Court has previously upheld the constitutionality of electrocution as a means of imposing the death sentence in numerous cases. As to lethal injection, the same conclusion was announced in *Wheeler v. Commonwealth*. This argument is without merit.

We have previously examined lethal injection as a method of execution and held it did not violate the constitutional standards prohibiting cruel and unusual punishment. We have no reason to depart from the position set out in that case. The protocol for lethal injection execution begins with a therapeutic dose of diazepam if it is requested. Diazepam, commonly referred to as Valium, is an anti-anxiety agent used primarily for the relief of anxiety and associated nervousness and tension. Certified phlebotomists and emergency medical technicians are allowed up to an hour to then insert the appropriate needles into the arm, hand, leg or foot of the inmate.

Three grams of sodium thiopental, commonly referred to as Sodium Pentothal, are then injected. This drug is a fast acting barbiturate that renders the inmate unconscious. At this level of ingestion the person is rendered unconscious for hours. The line is then flushed with 25 milligrams

39. *See Perdue v. Commonwealth,* 916 S.W.2d 148 (Ky.1995). *Cf. Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).

40. *See Foley,* 942 S.W.2d 876.

41. 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994).

42. 99 F.3d 1302 (6 Cir.1996), *overruled on other grounds by In re Abdur'Rahman,* 392 F.3d 174 (6 Cir.2004).

43. 694 S.W.2d 665 (Ky.1985).

44. *Wheeler v. Commonwealth,* 121 S.W.3d 173 (Ky.2003) (holding that lethal injection is a permissible form of execution in Kentucky), *McQueen v. Parker,* 950 S.W.3d 226 (Ky.1997) (holding that electrocution has been upheld as constitutional numerous times in Kentucky jurisprudence).

of a saline solution to prevent adverse interaction between the drugs.

Fifty milligrams of pancuronium bromide, commonly referred to as Pavulon, follows. This drug causes paralysis. The purpose is to suspend muscular movement and to stop respiration or breathing. The line is again flushed with 25 milligrams of a saline solution to again prevent any adverse interaction between the drugs.

Finally, 240 milligrams of potassium chloride is injected. This chemical disrupts the electrical signals required for regular heart beat and results in cardiac arrest. An electrocardiogram verifies the cessation of heart activity. A doctor and a coroner then verify the cause of death.

The Eighth Amendment to the United States Constitution and Section 17 of the Kentucky Constitution both forbid cruel and unusual punishment. The use of three grams of sodium thiopental, commonly referred to as Sodium Pentothal, renders the condemned unconscious. The prohibition is against cruel punishment and does not require a complete absence of pain.

## XVI. Death Penalty Voir Dire

Appellant, in this unpreserved issue, argues that the process of asking potential jurors their opinion of the death penalty has a prejudicial effect on the jurors selected and that it was error for the trial judge to excuse for cause, those who would not consider the death penalty. Such arguments have been rejected by this Court in *Hodge v. Commonwealth*[45] and numerous other death penalty cases.[46]

---

45. 17 S.W.3d 824 (Ky.2000).

46. *Accord Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

## XVII. Cumulative Error

Appellant claims that cumulative error renders the convictions and sentences here unreliable because they denied him a fundamentally fair trial. We cannot agree. These arguments have been discussed in numerous previous cases. Appellant received a fundamentally fair trial and the absence of error in this case does not lend itself to an argument for cumulative error relief. Each of the complaints offered by Appellant is without merit and has been carefully reviewed.[47] Because there was no individual error, there certainly can be no cumulative error. An examination of the record here indicates there is no reason to change that position.[48]

Accordingly, the final judgment imposing the death penalty is affirmed.

All sitting. LAMBERT, C.J., and CUNNINGHAM, MINTON, NOBLE, SCHRODER, and SCOTT, JJ., concur.

---

47. *See generally, Bowling,* 942 S.W.2d 293; *Perdue,* 916 S.W.2d 148.

48. *See Bowling,* 942 S.W.2d 293.