Jeremy CARAWAY, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2013–SC–000610–MR

Supreme Court of Kentucky.

RENDERED: MAY 14, 2015

Counsel for Appellant: Paul Gregory Croushore, PO Box 75170, Cincinnati, Ohio 45275

Counsel for Appellee: Jack Conway, Attorney General, James Hays Lawson, Assistant Attorney General, Jeanne Deborah Anderson, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, 1024 Capital Center Drive, Frankfort, Kentucky 40601

## OPINION OF THE COURT BY JUSTICE NOBLE

The Appellant, Jeremy Caraway, was convicted of various sex offenses and sentenced to the maximum term of 20 years in prison. On appeal, he claims that his right to an impartial jury was violated when a probation and parole officer served on his jury, that his trial counsel provided ineffective assistance in failing to object to the prospective juror, that the trial court erred in refusing to hear additional character testimony at final sentencing, and that the trial court erred in failing to note his presentence custody credit on the Final judgment of conviction and sentence. Finding no error requiring reversal, this Court affirms.

## I. Background

In May 2011, Caraway was the pastor at Loyall Church of God in Harlan County, Kentucky. Sherry[1] was a member of the church and was thirteen years old at the time. Members of Sherry's family reported sexual misconduct between her and Caraway after discovering inappropriate text messages on her cell phone.

On July 18, 2011, Caraway was indicted on two counts of rape in the second degree, KRS 510.050, two counts of sodomy in the second degree, KRS 510.080, two counts of sexual abuse in the first degree, KRS 510.110, two counts of unlawful transaction with a minor in the first degree, KRS 530.064, and one count of unlawful use of electronic means to induce a minor to engage in sexual activities, KRS 510.155. One of the sodomy counts, both unlawful transaction counts, and the unlawful use of electronic means count were later dismissed.

Following a series of pretrial motions and hearings, Caraway's jury trial commenced on April 30, 2013. Because of a judicial vacancy in the Harlan Circuit Court at that time, Special Senior Status Judge Robert McGinnis presided over the trial. Following a two-day trial, the jury returned a verdict finding Caraway guilty of one of the counts of second-degree rape, the remaining count of second-degree sodomy, and both counts of first-degree sexual abuse. The jury found Caraway not guilty of the other rape count. Following the penalty phase at which Caraway's wife was the only witness called to testify on his behalf, the jury recommended five-year prison sentences for each count to be

---

1. Consistent with this Court's present practice, "Sherry" is a pseudonym employed in this opinion to protect the identity of the minor victim.

served consecutively for a total maximum sentence of 20 years in prison.

At the final sentencing hearing on August 1, 2013, Special Judge Robert Costanzo presided and declined to hear additional character evidence proffered by Caraway for the first time. Instead, he entered a final judgment of conviction and sentence consistent with the jury's recommendation.

Caraway now appeals as a matter of right. *See* Ky. Const. § 110(2)(b).

## II. Discussion

**A. Caraway's acceptance of Juror 367 waived his right to appellate review of the trial court's failure to strike the juror for cause.**

Caraway's first claim of error is that the trial court abused its discretion in allowing Juror 367, a probation and parole officer, to sit on the jury. He argues that this resulted in a structural error because it violated his constitutional right to an impartial jury under Sections Seven and Eleven of the Kentucky Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. Because the record makes clear that Caraway accepted Juror 367 without objection, this Court concludes that he waived his right to appellate review of this issue.

The first relevant portion of voir dire proceeded as follows:

Judge: Does anybody know anything about the events in this case? Or have you heard anything, read anything, or have any knowledge whatsoever about this case?

Prospective Juror[2]: I've been in court when [Caraway]'s come in for court [inaudible].

Judge: Do you know anything other than what you saw in the court proceedings?

Prospective Juror: No.

Judge: You didn't hear anything about the facts of the case, did you?

Prospective Juror: No.

Judge: Is there anything that you may have learned from that to cause you to favor or disfavor one side or the other?

Prospective Juror: No.

A short time later, the conversation returned to Juror 367[3]:

Judge: Does anyone have a connection to any of the attorneys in the case, Ms. West or the Commonwealth attorneys, as far as have they represented you in the past? Do they now? Have they been on the other side of a case from you? Or any involvement at all?

Juror 367: I work in the court system.

Judge: And what is your function in the court system?

Juror 367: Probation and parole officer.

Judge: And you worked with all of the attorneys involved in here?

Juror 367: Yes.

This point illustrates the speculative, premature nature of Caraway's claims on direct appeal. *See infra* Part II.B (dismissing as premature claim of ineffective assistance of counsel).

---

**2.** After watching the video recording of voir dire, it is impossible to determine to whom the judge is speaking at this point. Although Caraway's Statement of the Facts attributes these responses to Juror 367, he later concedes in the Argument portion of his brief that these comments were "likely" made by "either Juror # 367 ... or Juror # 132." Juror 132 was a deputy circuit clerk for the Harlan Circuit Court.

**3.** The identity of the juror during this exchange is clear because Juror 367 was the only probation and parole officer in the jury pool.

Judge: Would you tend to favor or disfavor one side or the other because of that?

Juror 367: No.

Neither Caraway's trial counsel nor the Commonwealth's attorneys had any further questions for Juror 367, and there was no further discussion at all of her qualifications and impartiality. Significantly, Juror 367 was not challenged for cause, nor was she removed from the panel with a peremptory strike. She ultimately sat on the jury, which was accepted by the parties and sworn to serve. Juror 367 also served as foreperson at trial.

Caraway never raised concerns over this jury before the trial court. In fact, this issue was raised for the first time on appeal to this Court.

 It has long been the rule that for-cause challenges to jurors must be made before the jury is sworn. *See Pelfrey v. Commonwealth*, 842 S.W.2d 524, 526 (Ky.1992); *see also* RCr 9.36(3). And generally, "objection to a juror because of his disqualification is waived by a failure to object to such juror until after verdict." *Pelfrey*, 842 S.W.2d at 526. As Caraway readily admits, he did not request Juror 367 be struck for cause, did not use a peremptory strike on Juror 367, or otherwise challenge Juror 367's impartiality or qualifications to the trial court below. Instead, Caraway accepted the prospective juror without reservation and in full knowledge of the juror's employment by the Division of Probation and Parole and attendant familiarity with the attorneys and court.

He cannot now assert for the first time on appeal grounds for disqualification of a prospective juror which he was fully aware of before the trial below. *See Polk v. Commonwealth*, 574 S.W.2d 335, 336–37 (Ky.App. 1978) ("When bias is apparent or

known before trial, and a juror is permitted to remain, the objection to the juror is waived."). Moreover, he had ample opportunity to further explore this juror's possible bias or other unfitness to serve as a juror. His failure to do so is necessarily a waiver because the juror's bias, if any, could have reasonably been determined in voir dire. *Cf. id.* ("When such facts are not known and would not reasonably have been determined prior to the selection of the jury, no waiver is involved, and an objection may be raised upon discovery of the bias.").

Therefore, this Court holds that Caraway waived his objection to the alleged partiality of Juror 367 and is thus precluded from seeking appellate review on those grounds.

**B. Caraway's ineffective assistance of counsel claim is premature.**

 The second claim of error asserted by Caraway is that the trial court erred in failing to *sua sponte* strike Juror 367 for cause where defense counsel had been "obviously ineffective in failing to properly conduct *voir dire* of the prospective juror." Citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which, broadly, requires an accused claiming ineffective assistance of counsel to prove deficient performance by counsel that prejudiced the accused, he argues that his trial counsel was deficient in "clearly s[eeking] a partial jury rather than an impartial jury, and therefore did not examine a potential juror for cause or peremptory challenge ... and that failure prejudiced the defendant by importing into the jury a person who never should have sat in judgment." Although he couches this claim as involving an alleged error by the trial court, Caraway's claim is in substance an ineffective assistance of counsel claim.

■ This case is a perfect example of why, "[a]s a general rule, a claim of ineffective assistance of counsel will not be reviewed on direct appeal from the trial court's judgment, because there is usually no record or trial court ruling on which such a claim can be properly considered." *Humphrey v. Commonwealth,* 962 S.W.2d 870, 872 (Ky.1998). As noted above, Caraway is challenging Juror 367 for the first time on direct appeal. He neither raised the issue to the trial court during trial nor challenged counsel's performance in a Criminal Rule 11.42 proceeding. In this sense, Caraway is making this ineffectiveness claim "both too late and prematurely." *Goldsmith v. Commonwealth,* 363 S.W.3d 330, 333 (Ky.2012). As a result, there is simply nothing in the record to allow this Court on direct appeal to properly consider and evaluate the allegations of ineffectiveness of counsel, which amount to little more than pure speculation at this point. While it is true that "a claim of ineffective assistance of counsel is [not] precluded from review on direct appeal, provided there is a trial record," *Humphrey,* 962 S.W.2d at 872, this is not such a case.

This Court therefore finds that Caraway's direct appeal claim of ineffective assistance of counsel is premature and cannot be decided on the existing record.[4]

**C. The trial court's refusal to hear additional character evidence at final sentencing was not error.**

■ At final sentencing, Caraway asked the trial court to exercise its discretion to depart from the jury's recommended maximum sentence of 20 years in prison. Essentially, Caraway's counsel argued that the jury had a made a mistake and convict-

ed an innocent man and that the court could ameliorate the damage by imposing a sentence of probation or conditional discharge. To support the request, Caraway sought to introduce additional evidence at the final sentencing hearing that was not introduced to the jury during the guilt phase or the penalty phase. Specifically, he asked the trial court to hear testimony from seven friends and family members as to his good character and also to consider numerous emails from people who were unable to attend the sentencing hearing in person. Special Judge Robert Costanzo presided over final sentencing and declined to hear the additional evidence. Caraway's counsel was permitted, however, to fully present his argument for leniency and deviation from the jury's recommendation. He was also allowed to proffer the additional evidence under KRE 103(a)(2) by describing in detail the witnesses' expected testimony, thereby making it available for appellate review. After this quite lengthy sentencing colloquy, the trial court denied the request and entered its judgment sentencing Caraway in accordance with the jury's recommendation.

Caraway argues that the refusal to hear his written and oral character witnesses was error because Special Judge Costanzo had not presided over the trial and thus had not heard all the evidence before the jury. He cites to this Court's previous decision in *Edmonson v. Commonwealth,* 725 S.W.2d 595 (Ky.1987), to essentially argue that the trial court's failure to allow him to put on this additional evidence deprived him of meaningful judicial sentencing, thus requiring reversal for a new sentencing hearing. But the sentencing in this case is readily distinguishable from

---

4. Since the Court does not address the merits of this claim or find that it is procedurally defaulted, our holding will not preclude Caraway from bringing his claim of ineffective assistance of counsel in the proper course at a later time, (i.e., an RCr 11.42 motion to vacate the judgment).

that in *Edmonson*, where the trial court had prepared its final judgment prior to the sentencing proceeding. In *Edmonson*, the Court held that it was an abuse of discretion for the trial court to make up its mind as to the sentence to be imposed on a plea of guilty without allowing the defendant "a fair opportunity to present evidence at a meaningful hearing in favor of having the sentences run concurrently or present other matters in mitigation of punishment." *Id.* at 596.

But the prejudgment we condemned in *Edmonson* is not present here. In addition to reviewing the presentence investigation report and confirming the accuracy of its contents, the trial court allowed Caraway significant leeway in arguing for leniency. While the trial court did not conduct a full blown evidentiary hearing for Caraway to introduce additional character testimony, it was not required to. *See Thornton v. Commonwealth*, 421 S.W.3d 372, 378 (Ky.2013) (rejecting *Edmonson* claim and holding that the brevity of a sentencing proceeding did not establish "lack of full and fair judicial consideration").

Instead, Caraway's opportunity to put on such testimony was during the penalty phase of his jury trial. *See* KRS 532.055(2), (2)(b) (during sentencing hearing before the jury, "[t]he defendant may introduce evidence in mitigation or in support of leniency"). *Edmonson* does not stand for the proposition that a defendant may completely re-litigate the penalty phase of his trial at sentencing. It only requires that a defendant be allowed a meaningful hearing. Accordingly, Special Judge Costanzo acted within his discretion in refusing to allow Caraway to put on additional character evidence after the jury had made its sentence recommendation.

Based on our review of the record, we are convinced that Caraway was afforded "meaningful judicial sentencing." *Thornton*, 421 S.W.3d at 378. Like in *Thornton*, "[t]here is no indication that the judge[ ] failed to fully consider the nature and circumstances of Appellant's crimes, the history and character of Appellant, and the severity of the sentence recommended by the jury." *Id.*; *see also* KRS 532.070(1). Therefore, Caraway is not entitled to relief for this claim of error.

**D. The trial court was not required or authorized to order credit for time served in custody before sentencing.**

■ Finally, Caraway asks this Court to order that the trial court's judgment reflect the proper jail time credit to which he is entitled for the days spent in jail prior to sentencing under KRS 532.120(3). At sentencing, Caraway brought to the court's attention an error in the calculation of the presentencing custody credit contained in the PSI prepared by the Division of Probation and Parole. *See* KRS 532.050(2)(b). The court acknowledged the mistake and stated that he would receive his full credit. But the final judgment is entirely silent as to presentencing custody credit. And the Commonwealth agrees that Caraway is entitled to a full credit for the time served before sentencing and that the judgment and sentence should be amended to reflect this. We disagree in light of the recent amendment to KRS 532.120(3).

Caraway is correct that he is entitled to have his prison sentence reduced by the amount of "[t]ime [he] spent in custody prior to the commencement of [his] sentence as a result of the charge that culminated in the sentence." KRS 532.120(3). Before it was amended in 2011, KRS 532.120(3) provided that the presentencing time spent in custody "shall be credited *by the court imposing sentence.*" (Emphasis added.) Thus, under this version of the

statute, trial courts had the duty to ensure the credit was properly applied, which "require[d] courts to address presentencing custody credit in their judgments." *Bard v. Commonwealth*, 359 S.W.3d 1, 4 (Ky. 2011) (citing *Doolan v. Commonwealth*, 566 S.W.2d 413, 415 (Ky.1978)).

But the current language of KRS 532.120(3), which became effective June 8, 2011, more than two years before Caraway was sentenced, provides that the time spent in custody before sentencing "shall be credited *by the Department of Corrections . . . in cases involving a felony sentence* and by the sentencing court in all other cases." (Emphasis added.) This change to the statutory language divested the trial court of its prior duty and authority to ensure proper application of the presentencing custody credit in felony cases and, instead, placed it solely under the purview of the Department of Corrections. The sentencing court is empowered to award custody credit in felony cases only when "presentence report indicates that a defendant has accumulated sufficient sentencing credits . . . to allow for an immediate discharge from confinement upon pronouncement of sentence." KRS 532.120(8). Otherwise, the role of the trial court under the statute as amended is essentially appellate in nature. *See* KRS 532.120(9) ("An inmate may challenge a failure of the Department of Corrections to award a sentencing credit under this section or the amount of credit awarded by motion made in the sentencing court no later than thirty (30) days after the inmate has exhausted his or her administrative remedies."). But the defendant must first pursue his administrative remedies with Corrections before this matter may be addressed by a court. *Id.*

Accordingly, since KRS 532.120 no longer authorizes trial courts to credit felony sentences for time spent in custody before sentencing, the Harlan Circuit Court did not err by entering final judgment that failed to reflect Caraway's presentencing custody credit.

### III. Conclusion

For the reasons set forth above, the judgment of conviction and sentence of the Harlan Circuit Court is affirmed.

All sitting. All concur.

