RENDERED: JUNE 9, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0218-MR

KATHERINE BARRETT                                               APPELLANT

v.

APPEAL FROM OHIO CIRCUIT COURT
HONORABLE TIMOTHY R. COLEMAN, JUDGE
ACTION NO. 19-CR-00002

COMMONWEALTH OF KENTUCKY                           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, GOODWINE, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Katherine Barrett brings this appeal from a January 26, 2022, Trial Order and Judgment and a Formal Sentencing Order of the Ohio Circuit Court upon a jury verdict finding Katherine guilty of two counts of complicity to commit sexual abuse in the first degree and sentencing her to five-years' imprisonment. We affirm.

Katherine Barrett is the biological mother of the victim, K.V. K.V. lived with her mother, Katherine, and her stepfather, Jason Barrett. In addition to

K.V., the Barrett household included four of K.V.'s half siblings – one older sister and three younger siblings. K.V.'s three younger siblings are the biological children of both Katherine and Jason.

When K.V. was fifteen years old, Jason began sexually abusing her. K.V. documented some of the incidents of sexual abuse perpetrated by Jason in a diary she kept on her iPod. K.V. eventually told her boyfriend about the sexual abuse and then shared screenshots of her diary entries with him. Upon learning about the sexual abuse, K.V.'s boyfriend insisted that K.V. tell an adult. So, K.V. decided to tell her mother. Unfortunately, Katherine did not believe K.V.'s allegations of sexual abuse were true and did not report the allegations or take any action to protect K.V. from Jason. As Katherine did nothing to protect K.V., K.V.'s boyfriend told a teacher about the sexual abuse. The teacher then reported the sexual abuse to the Cabinet for Health and Family Services (Cabinet).

Upon receiving the report, the Cabinet came to the Barrett's home on two occasions to conduct welfare checks on K.V. K.V. denied the sexual abuse on both occasions out of fear that she and her siblings would be placed in foster care. K.V. was also interviewed at home by a social worker with the Cabinet. Prior to the interview, Katherine instructed K.V. not to mention anything about Jason "touching" her. Thereafter, a police detective investigated the allegations of sexual

abuse and interviewed K.V. outside of the Barrett's home. At that time, K.V. revealed to the detective that Jason had been sexually abusing her.

Jason was subsequently indicted upon nine counts of sexual abuse in the first degree.[1] Katherine was indicted upon five counts of complicity to commit sexual abuse in the first degree and four counts of tampering with a witness. A joint jury trial ensued. A directed verdict of acquittal was granted in favor of Katherine as to three of the five counts of complicity to commit sexual abuse and as to all four counts of tampering with a witness. However, Katherine was found guilty of two counts of complicity to commit sexual abuse in the first degree and was sentenced to a total of five-years' imprisonment. This appeal follows.

Katherine asserts the trial court erred by denying her motion for a directed verdict of acquittal upon the remaining two counts of complicity to commit sexual abuse. More particularly, Katherine contends there was insufficient proof that Katherine intended to promote or facilitate Jason's sexual abuse of K.V. to support a guilty verdict upon the two counts of complicity to commit sexual abuse in the first degree.

Our standard of review upon a motion for directed verdict in a criminal action was articulated by the Kentucky Supreme Court in *Commonwealth*

---

[1] Jason Barrett was found guilty of nine counts of sexual abuse in the first degree and was sentenced to a total of twenty-years' imprisonment.

-3-

*v. Benham*, 816 S.W.2d 186 (Ky. 1991). Therein, the Court noted that the inquiry is whether "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.* at 187 (citation omitted); *see* Kentucky Rules of Civil Procedure (CR) 50.01.

First-degree sexual abuse is codified in Kentucky Revised Statutes (KRS) 510.110(1), which provides, in relevant part, that a person is guilty of sexual abuse in the first degree when:

> (d) Being a person in a position of authority or position of special trust, as defined in KRS 532.045, he or she, regardless of his or her age, subjects a minor who is less than eighteen (18) years old, with whom he or she comes into contact as a result of that position, to sexual contact . . . .

KRS 510.110(1)(d). And, complicity is defined in KRS 502.020, which provides, in relevant part:

> (1) A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:
>
> . . . .
>
> (c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

KRS 502.020(1)(c).

-4-

Relevant to this case, Jason was found guilty of sexual abuse in the first degree. To be guilty of first-degree sexual abuse, the jury necessarily found that Jason was in a position of authority or special trust and subjected K.V., a person less than eighteen years of age, to sexual contact. KRS 510.110(1)(d). So, to find Katherine guilty of being complicit in Jason's crime of sexual abuse, there must be evidence that Katherine, with the intention of promoting or facilitating the commission of sexual abuse, failed to prevent it despite having the legal duty to do so. KRS 502.020(1)(c).

In the case *sub judice*, there was evidence that Katherine did not report the sexual abuse to authorities when K.V. revealed it to her. And, Katherine failed to protect K.V. by permitting Jason to remain in the home where he continued to abuse K.V. Katherine's failure to protect K.V. after she reported Jason's acts of sexual abuse to Katherine resulted in two additional incidents of abuse being perpetrated upon K.V. Considering said evidence, we believe that it was not clearly unreasonable for the jury to find Katherine guilty of two counts of complicity to commit sexual abuse. *See Benham*, 816 S.W.2d 186. Thus, the trial court did not err in denying Katherine's motion for a directed verdict of acquittal upon the two counts of complicity to commit sexual abuse.

Katherine next contends the trial court committed error during closing argument by permitting the Commonwealth to misstate the law regarding the

presumption of innocence. More particularly, Katherine asserts the misstatement seriously diluted the Commonwealth's burden of proof to the jury.

The comments made by the Commonwealth Attorney during closing argument were as follows:

> So then we get to the instructions concerning Jason Barrett. By the way, the presumption of innocence, at this point in time, you've heard the proof. You've heard the evidence. You've heard this child tell you in details that I didn't want to have to get into in mixed company, but we have to hold these people accountable. *And that presumption of innocence, I would submit to you, is gone because you've heard the proof beyond a reasonable doubt.* There is no reasonable doubt what happened in this case because this child told you the truth.

Commonwealth's Brief at 10. Although the above statements were made regarding the jury instructions as to Jason, Katherine argues that the Commonwealth invited the jury to believe that the presumption of innocence ended before the jury even began its deliberation.

Katherine acknowledges that this issue was not properly preserved and requests review under the palpable error rule of Kentucky Rules of Criminal Procedure (RCr) 10.26. Pursuant to RCr 10.26, palpable error occurs if a defendant's substantial rights are affected and a manifest injustice would occur. *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky. 2006). More particularly, where a defendant fails to object to an act of prosecutorial misconduct, the Court "will reverse only where the misconduct was flagrant and was such as to render the trial

-6-

fundamentally unfair." *Murphy v. Commonwealth*, 509 S.W.3d 34, 49 (Ky. 2017) (citations omitted). To determine whether a prosecutor's impropriety rises to the level of flagrant misconduct, the following four factors are considered: (1) whether the comments tended to mislead the jury or prejudice the defendant, (2) whether the comments were isolated or extensive, (3) whether the comments were deliberately or accidentally made before the jury, and (4) whether the evidence against the defendant was overwhelming. *Mayo v. Commonwealth*, 322 S.W.3d 41, 56 (Ky. 2010) (citation omitted). And, we must view the allegations of prosecutorial misconduct "in the context of the overall fairness of the trial" and will reverse only when the misconduct is so egregious that it undermined the fundamental fairness of the trial. *Murphy*, 509 S.W.3d at 49.

As to the first factor, we must consider whether the jury was misled or the defendant was prejudiced by the Commonwealth's comment in closing argument regarding the presumption of innocence. Essentially, it appears that the Commonwealth was merely pointing out that after hearing the evidence presented, it should be obvious to the jury that proof beyond a reasonable doubt had been presented to demonstrate that Jason had committed these acts of sexual abuse against K.V. The comment did not rise to the level of misleading the jury or prejudicing the defendant. Therefore, we view the first factor as weighing in favor of the Commonwealth.

As to the second factor, we must consider whether the Commonwealth's comment was isolated or extensive. In this instance, the comment was one very brief and isolated incident. Given that the single comment was brief and constituted an isolated event, the second factor also weighs in favor of the Commonwealth.

As to the third factor, our inquiry is whether the Commonwealth's comment was deliberately or accidentally made in the presence of the jury. In this instance, the Commonwealth made the brief comment directly to the jury during closing argument. Therefore, the third factor weighs in favor of Katherine.

Finally, as to the fourth factor, we must determine whether the evidence presented against Katherine was overwhelming. K.V.'s detailed and consistent direct testimony certainly constituted overwhelming evidence of Katherine's guilt. Thus, the fourth factor weighs in favor of the Commonwealth.

Given application of the four factor test, we do not believe that the nonprejudicial and isolated comment made by the Commonwealth in closing argument constituted flagrant misconduct that undermined the fundamental fairness of the trial; nor do we believe that it affected Katherine's substantial rights or constituted a manifest injustice. *See Martin*, 207 S.W.3d 1. Therefore, we do not believe that the Commonwealth's comment made during closing argument constituted reversible error.

Katherine next asserts the trial court erred by permitting K.V. to read from diary entries she made on her iPod regarding the incidents of sexual abuse Jason perpetrated upon her. More particularly, Katherine asserts that neither the Commonwealth nor the trial court identified the particular rule of evidence that permitted K.V. to read from the diary entries during her testimony. In fact, Katherine claims that K.V.'s testimony was inadmissible hearsay. As no objection to this testimony was made at trial, Katherine claims that the error constituted palpable error per RCr 10.26.

During K.V.'s direct examination, the Commonwealth asked K.V. to testify about the specific occasions when Jason had sexually abused her. The Commonwealth asked K.V. how old she was on each occasion, what was going on at the time, and in what room the abuse occurred. K.V. described each act of abuse in detail. The Commonwealth went through all the acts that formed the basis for each of the sexual abuse charges upon which Jason and Katherine were ultimately convicted. Then, near the end of K.V.'s testimony, K.V. picked up some papers at the direction of the Commonwealth. K.V. explained that she had kept a diary on her iPod and that she had documented some of the incidents of abuse. Then, K.V. read from these papers that were printouts of screenshots from her iPod diary entries.

Kentucky Rules of Evidence (KRE) 801A(a)(2) governs prior consistent statements made by a witness and provides:

> (a) Prior statements of witnesses. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is:
>
> . . . .
>
> (2) Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]

Initially, it must be noted that the general prohibition against the admissibility of hearsay evidence is found in KRE 802. *Edmonds v. Commonwealth*, 433 S.W.3d 309, 313 (Ky. 2014). On the other hand, KRE 801A(a)(2) "excludes certain statements from the hearsay rule, so long as they meet its requirements." *Id.* at 313. In other words, KRE 801A(a)(2) is not a bar to the admission of testimony; rather, it provides "authority for the admission of evidence despite the hearsay prohibition in KRE 802." *Id.* at 313. Particularly relevant to the issue raised herein, KRE 801A(a)(2) permits an out-of-court statement by a witness, which would be otherwise excluded by the hearsay rule, "to be admissible as long as it is 'offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.'"

*Murray v. Commonwealth*, 399 S.W.3d 398, 403 (Ky. 2013) (quoting KRE 801A(a)(2)).

In the case *sub judice*, the Commonwealth argues it introduced K.V.'s testimony regarding the diary entries to rebut the express claim that K.V. had recently fabricated these allegations of sexual abuse against Jason. According to the defense theory at trial, K.V. fabricated the allegations of sexual abuse because Katherine told K.V. that she could not move in with her new boyfriend in Georgetown, Kentucky. K.V. apparently intended to stay with her boyfriend following Christmas of 2018. However, the dated diary entries demonstrated that the sexual abuse dated back to March 10, 2017, which was well before K.V. discussed moving in with her boyfriend. Therefore, under the circumstances presented, the trial court properly allowed K.V. to read from her diary entries pursuant to KRE 801A to rebut Katherine's claim that K.V. had recently fabricated the allegations of sexual abuse against Jason. *See Edmonds*, 433 S.W.3d 309.

For Katherine's next argument, she contends that the trial court erred by not granting her jail-time credit for the time she spent on home incarceration. Again, this error is unpreserved, and Katherine has requested review pursuant to the palpable error rule of RCr 10.26.

KRS 532.245(1) provides that a person is entitled to jail-time credit for time spent on home incarceration. However, KRS 532.120(3) provides that

-11-

"[t]ime spent in custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence shall be credited by the Department of Corrections toward service of the maximum term of imprisonment in cases involving a felony sentence[.]"  The language of KRS 532.120(3) has placed the duty of ensuring proper application of presentencing custody credits in felony cases "solely under the purview of the Department of Corrections."  *Caraway v. Commonwealth*, 459 S.W.3d 849, 855 (Ky. 2015).  Accordingly, a defendant must first pursue and exhaust his administrative remedies with the Department of Corrections before the trial court may address the issue of presentencing custody credits.  *Id.* at 855.

Katherine's final argument is that she is entitled to a new trial under a theory of cumulative error.  However, as we have found no individual error in this case, we likewise, can discern no cumulative error.  *Furnish v. Commonwealth*, 267 S.W.3d 656, 668 (Ky. 2008).

For the foregoing reasons the Trial Order and Judgment and Formal Sentencing Order of the Ohio Circuit Court is affirmed.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Robert C. Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Robert Baldridge
Assistant Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky